RUNKLE and Others *v.* GATES and Others.

The declaration of a testator, made six or eight days after the execution of his will, is not a part of the *res gesta,* and hence, is not admissible in evidence to show fraud in obtaining the will, especially where the will was in his possession at the time the declaration was made.

And it will be presumed, where there is no evidence to the contrary, that the will was in the testator's possession, at the time he made such declaration.

It is only requisite that a testator, at the time of making his will, should be of such sound mind and memory as to enable him to know and understand the business in which he is engaged. It is not necessary that he should be in the full possession of his reasoning faculties.

Under the statute of 1843, a testator's intent to revoke his will did not, of itself, render the will inoperative; nor did the belief that the will had been destroyed, and his declaration of assent to its destruction, affect its validity.

The requirements of the statute, touching the revocation of wills, must be strictly followed.

APPEAL from the *Tippecanoe* Circuit Court.

DAVISON, J.—*Peter, John, Michael,* and *Jane Runkle* sued *Mary E. Runkle* and others, for partition. The complaint charges that one *John Runkle* died in the year 1846, leaving, in addition to the plaintiffs, *Abram, Mary, Patsy, Man-*

*Nov. Term, 1858.*

RUNKLE
v.
GATES.

*Tuesday, November* 23.

*uel, Lewis, Diana,* and *James Runkle,* his children and heirs at law; that *James Runkle* has since died, leaving *Mary E. Runkle,* his only child, and *Martha Runkle,* his widow, who is now intermarried with *Samuel Gates;* and that *John Runkle* died intestate, leaving, however, a pretended will, which, on its face, purports to devise all his real estate (describing it) to his son, *James Runkle.* It is averred that the will was procured by the fraud of *James Runkle;* that shortly after its execution, *James* obtained possession of it surreptitiously; and that *John Runkle,* having demanded the will for the purpose of cancelling it, was told by *James* that it was already burned and destroyed, which supposed destruction *John Runkle* expressly ratified. The relief prayed is, that the paper purporting to be the will of *John Runkle,* be held as void; and that partition of the lands described, be made, &c.

*Samuel Gates, Martha Gates,* and *Mary E. Runkle,* answered the complaint. The other defendants were defaulted. The answer alleges that the lands in question were owned in severalty by *James Runkle,* at the time of his death; that he held the same in fee simple, under the last will of *John Runkle,* which was not, as alleged, procured by fraud, but was and is the will of *John Runkle,* and as such was duly admitted to probate; that *James Runkle,* the devisee, until his death held undisturbed possession under the will, and upon his death, the whole title descended to *Mary E. Runkle,* subject, only, to a dower right in her mother.

Reply in denial of the answer.

The issue thus formed was submitted to a jury, and there was a verdict for the defendants who answered, upon which the Court, having refused a new trial, rendered judgment, &c.

The will in contest bears date *August* the 9th, 1845. It is duly signed and sealed by *John Runkle,* and attested, in due form, by two witnesses. *John Runkle* lived about one year after the execution of the will, most of the time in good health. He was sick at the time it was executed, but recovered in a few days. The following is one of its

provisions: "I devise to my son, *James Runkle*, all my real estate on which I now live, to have possession of two-thirds of it at my death, and all of it at the death of my wife."

Defendants, at the proper time, moved to suppress a portion of the deposition of one *Joseph Oiler*, which had been taken by the plaintiffs, filed in the cause, and duly published. The portion to which the motion referred is as follows: " The fall before *John Runkle* died, I [witness] was helping him thrash wheat. *John Runkle* and his son, *James*, got into a dispute about the work, and the old man told him (*James*) to leave; that he would not have him about him, as he would not do any thing to suit him. The old man said to *James*, "you are carrying my will around with you in your pocket, and I do not want you about me." And *James* said he hadn't the will for he had burnt it. The old man then said, if he had burnt the will, he was satisfied; that he did not want any will, as the law of *Indiana* was will enough for him. The motion to suppress was sustained.

During the trial, the plaintiffs offered to prove, by three witnesses, that *John Runkle*, in their presence, frequently demanded of *James Runkle* the paper purporting to be his (*John's*) will, telling *James* that he had stolen it; that he (*John*) wanted to destroy it, as he did not intend that that paper should be his will, and that *James*, upon the occasion of the several demands, admitted that he had had the will in his possession, but stated that he had burnt it, and that it no longer existed; to which statements *John Runkle* replied that he was glad that it was destroyed; that he intended to have destroyed it if he had got it. Again; the plaintiffs offered to prove "that after the death of *John Runkle*, and before the probate of the will, *James Runkle* stated that he had had the will; that he had had it all the while, and fooled the old man; and that he, *John Runkle*, had died thinking it was destroyed." And further, they offered to prove, "that some six or eight days after the execution of the will, and immediately after *John Runkle* had

VOL. XI.—7

recovered from his sickness, he said the instrument he had executed was not his will, and if he had been in full possession of his reasoning faculties he would not have executed the same." All the above offers were refused by the Court—exceptions were taken by the plaintiffs—and the refusals to admit the proposed evidence are assigned for error.

Was the declaration of *John Runkle*, made six or eight days after the execution of the will, admissible in evidence?

It has been ruled that the statements of a testator, at the time of making a will, and afterwards, if so near as to be part of the *res gesta*, are admissible to show fraud in obtaining the will. But not declarations at any distance of time after the will has been executed—especially when the will has been in the testator's possession. *Smith* v. *Fenner*, 1 Gallis. 170.—*Roberts* v. *Trawick*, 13 Ala. R. 68.

This exposition seems to be correct, and, when applied to the question under discussion, at once shows that the declaration proposed to be proved was, in no sense, a part of the *res gesta*. What the testator did say, cannot, in view of the distance of time after he made the will, be regarded in connection with the transaction of executing that instrument. And it must be presumed, there being no evidence to the contrary, that the will was in the testator's possession, at the time he made the declaration. But the effect of the proposed evidence is, that the instrument was not his will, because, when it was executed, he was not in full possession of his reasoning faculties. Now this evidence, had it been admitted, would not have proved his incapacity to make a will. Few if any persons are in full possession of their reasoning faculties when prostrated with disease. Still, a person, when so prostrated, is capable of making a will, if, at the time he executes it, his mind and memory are sufficiently sound to enable him to know and understand the business in which he is engaged. 1 Jarm. on Wills, 50. But the complaint contains no averment that the testator was of unsound mind; nor is that

point raised by the issues. It follows that, upon the ground of irrelevancy alone, the declaration was inadmissible.

The next question to settle is, were the declarations offered in evidence, relative to the destruction of the will, properly excluded?

As we have seen, the plaintiffs offered to prove that *John Runkle* had demanded the will of his son, *James*, that he (*John*) might destroy it; that *James* stated he had burnt the will—that it no longer existed—when *John* replied, he was glad that it was destroyed—that the law of *Indiana* was will enough for him.

The evidence thus proposed was obviously intended as proof of the revocation of the will; hence, the inquiry arises, was it effective for that purpose?

A statute in force when the will is alleged to have been revoked, declares that "No will in writing, &c., shall be revoked unless by burning, tearing, canceling, or obliterating the same with the intention of revoking it, by the testator himself, or by some person in his presence and by his direction or consent, or by some other will, codicil, or other writing," &c., signed by the testator, or by some one in his presence, with his consent, and attested and subscribed in his presence by two or more witnesses; "and when any such will is burnt, torn, canceled, or obliterated by any other person than the testator himself, the direction and consent of such testator, and the fact of such injury or destruction, shall be proved by at least two witnesses." R. S. 1843, p. 491, § 29.

Thus, it will be seen, that a testator's intent to revoke will not, of itself, render his will inoperative; nor does his mere belief that it has been destroyed affect its validity. The statute requires not only an intention to revoke, but an act of revocation, to be done by the testator himself, or by some person in his presence, and by his direction. If this construction be correct, and we think it is, the evidence was properly refused; because there was, in this instance, no act done that could, within the statute, amount to a revocation. In reference to the *English* statute, which

Nov. Term,
1858.

RUNKLE
v.
GATES.

is similar to ours, Mr. *Jarman*, in his Treatise on Wills, says: "The legislature having pointed out certain modes by which a will may be revoked, it is not in the power of the judicature, under any circumstances, to dispense with part of its requisitions, and accept the mere intention or endeavor to perform the prescribed act as a substitute or equivalent for the act itself, though the intention or endeavor may have been frustrated by the improper behavior of a third person." Jarm. on Wills, c. 7, § 2. Conceding, then, that the testator, in this instance, was deceived into the belief that his will was destroyed, still he knew, because he is presumed to have known the law, that such destruction, to be available, should have been in the mode pointed out by the statute—made in his presence and by his direction. And if he really intended that his will should not remain effective—the same not being in his possession—he might have revoked it by a writing properly attested. We are advised that the authorities on this subject are not uniform; but the weight of them seems to favor the view just taken. In *Doe* v. *Harris*, 6 Ad. and El. 209, the testator, intending to destroy his will, threw it on the fire. The envelope was merely singed, but the will itself not at all burned, when another person—a relative of the testator, who lived with him—snatched it from the fire, and, upon the will being demanded by the testator, threw another paper into the fire, pretending it to be the will. The Court held that these facts, under the statute in relation to wills of freehold, did not amount to a revocation of the will. In delivering the opinion, Lord DENMAN said: "It would be a violence to language, if we said here, that there was any evidence to go to the jury of the will having been burnt. Great inconvenience would be introduced, by holding that there may be a virtual compliance with the statute; but none in saying that if a testator perseveres in the intention of revoking his will, he shall fulfill it by some of the means pointed out in the statute." So in *Boyd* v. *Cook*, 3 Leigh, 32, a blind testator directed his will to be destroyed, and supposed it was destroyed, when in fact no act had been done towards its destruction. It

was held that there was no revocation. See, also, *Jackson* v. *Kniffen*, 2 Johns. Ch. 31; *Hise* v. *Faucher*, 10 Ired. 139; *Gaines* v. *Gaines*, 2 A. K. Marsh. 199; *Jackson* v. *Betts*, 9 Cow. 208. These authorities plainly indicate the principle, that an intention to revoke a will is utterly inoperative unless there be some act done in pursuance of that intention, and such act be one of revocation, within the requirements of the statute. Apply this to the case at bar, and it will at once be seen that in its rulings the Circuit Court committed no error. The judgment must, therefore, be affirmed.

*Per Curiam.*—The judgment is affirmed with costs.

*W. C. Wilson* and *J. M. La Rue*, for the appellants.

*R. C. Gregory* and *J. Pettit*, for the appellees.