## WOOLERY ET AL. *v.* WOOLERY ET AL.

WILL.—*Real Estate Devised, and Afterward Conveyed, and Again Acquired by the Testator.*—In 1853, A., by his will, devised certain real estate to his two sons, B. and C. In 1858, he and his wife conveyed the same real estate to his son B. who at the same time made his bond for the support of A. and wife during their lives. On some misunderstanding arising, in 1859, B. reconveyed the real estate to A., and the latter surrendered to B. the bond for the support of himself and wife. There was no republication of the will of A. after the reconveyance to him of the real estate. A. died in 1866, and the will was thereafter probated.

*Held* (WORDEN, J., dissenting), that the reconveyance of the real estate to the testator left the title in him at the time of his death as it was when the will was made, and restored the operative power of the will over the subject-matter; and no revoking act, according to the statute, having been performed by the testator, and the will not being revoked by necessary implication at or before the death of A., it was still in force.

Woolery *et al. v.* Woolery *et al.*

From the Lawrence Circuit Court.

*S. H. Buskirk, N. F. Malott,* and *T. R. Cobb,* for appellants.
*A. B. Carlton,* for appellees.

BIDDLE, J.—Suit for the partition of lands. The proceedings, which, from the points raised, we need not notice at length, resulted in a partition of the lands, setting off to the appellees each one-third part, and dividing the remaining third in various proportions amongst the appellants.

All the parties claim under Jacob Woolery, their common ancestor, who died seized of the lands. The appellants claim by descent, the appellees by will. Joseph Woolery claims by will directly to himself, Emily Woolery claims by will to Jacob Woolery, Jr., of whom she is the daughter and sole heir. There was some question about advancements made by Jacob Woolery, Sr., to the appellants, which need not be noticed; and also some conflicting evidence touching alleged fraudulent conduct of Joseph Woolery, in endeavoring to prevent the revocation of the will made by Jacob Woolery, Sr., under which Joseph claims; but the jury did not find the fraud established, and, with the evidence all before us, we agree with the verdict. Points are also made against certain instructions given to the jury, and certain other instructions refused and modified by the court; but as the sole question in the case turns upon the revocation or non-revocation of the will of Jacob Woolery, Sr., devising the lands in controversy, we think there is no available error in the instructions.

The important facts of the case are as follows: On the 2d day of November, 1853, Jacob Woolery, Sr., made his will. Amongst other bequests, he bequeathed to his two sons, Joseph Woolery and Jacob Woolery, Jr., the farm he then lived upon, which was composed of the lands in controversy. On the 23d day of January, 1858, Jacob Woolery, Sr., joined by Hannah Woolery, his wife, conveyed the same lands to Joseph Woolery, the devisee, who at the same time executed his bond for the support of the said Jacob and Hannah Woolery, who were his parents, during their lives. On the 28th day of October, 1859, some misunderstanding or dissatisfaction having occurred

between the parties, Joseph Woolery reconveyed the same lands to Jacob Woolery, Sr., who surrendered the bond given by Joseph for the support of the said Jacob and Hannah Woolery. There was no republication of the will by Jacob Woolery, Sr., after the reconveyance of the lands to him by Joseph Woolery. Jacob Woolery, Sr., died seized of the lands in controversy, under the reconveyance made by Joseph Woolery. On the 5th day of December, 1866, after the death of Jacob Woolery, Sr., the will was duly admitted to probate.

There was other evidence admitted on the trial, tending to show that a certain paper was burned in the presence of Jacob Woolery, Sr., which he might have supposed was the will; and of his conversations tending to show that he thought the will was burned, and that he was satisfied to leave his lands to his heirs according to the law of descent; and of other collateral matters, but nothing, unless it should be the conveyance and reconveyance of the lands devised, as above stated, that would amount, under our statute, to a revocation of the will.

By the common law, and notwithstanding the statute of frauds, 29 Charles 2, any considerable alteration, such as a conveyance of part of the lands after. devise, was held to revoke the entire will; but it was admitted that this line of decisions was sustained more from the force of precedent than from the soundness of the reasoning. *Goodtitle* v. *Otway*, 7 Term R. 395. Most of the English judges regretted the rule which they were bound to follow. Lord MANSFIELD literally denounced it, saying, in *Doe* v. *Pott*, 1 Doug. 709, that " all revocations, which are not agreeable to the intention of the testator, are founded on artificial and absurd reasoning. The absurdity of Lord Lincoln's case is shocking. However, it is now law."

To remedy this mischief, the English statute, 1 Vict. c. 26, with respect to wills, was enacted. The provisions in this statute touching the revocation of wills are similar to those in our code, except that they do not provide for taking back a new estate in the lands which may be conveyed after the devise, but enact that a will shall be construed to take effect,

as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will. Although under this statute the English courts hold that a conveyance of lands after devise will revoke the will as to that, yet this is where the title remains out of the testator at the time of his death. They now uniformly hold, "that all which is requisite is, that the testator shall, at the time of his death, be seized of substantially the same estate [as that] of which he was seized at the time of his making his will." 1 Redfield Wills, 336, par. 11.

In Virginia, it has been held that a conveyance of the property after devise, by a deed of trust, will not revoke the will. *Hughes* v. *Hughes' Ex'r,* 2 Munford, 209. The same in Pennsylvania. *Clingan* v. *Mitchelltree,* 31 Penn. St. 25. And in Alabama, under a statute similar to our own, the same rule has been followed. *Stubbs* v. *Houston,* 33 Ala. 555. In this State, we have found no case in point with the one under consideration, but the rule is well settled that a will can not be revoked except by some mode prescribed by the statute; and the act must be done with the intention of revoking the will, or it will be ineffectual. Neither the act nor the intention alone will be sufficient; they must concur. Nor will the belief of the testator that he has, by some act, revoked his will, and his intention to revoke it by such act be sufficient, unless the act itself is one prescribed by the statute as sufficient to revoke a will. *Wright* v. *Wright,* 5 Ind. 389; *Runkle* v. *Gates,* 11 Ind. 95.

We come now to the statute in the code concerning wills, 2 G. & H. 551:

"Sec. 8. If, after having executed a will, devising any property, any testator shall make a conveyance of his interest therein, and shall take back a new estate therein, such new estate shall pass by his will to the person to whom the original estate or interest was devised, unless it shall appear from such will, or by the conveyance of his estate, or interest therein, or by the instrument by the force of which such new estate is taken

back, that the testator intended that such conveyance should operate as a revocation of such devise."

This is the only section in the act which can affect the case before us. Sec. 9 is not applicable to cases where the new estate is taken back, and sec. 19 does not affect the method of revocation involved in this case. In construing this statute, we must keep in view the well known maxims, that a will is to be construed liberally according to the intention of the testator, and a remedial statute liberally according to the intention of the legislature. In sec. 8, which must govern this case, three methods are prescribed, by either of which a will may be revoked:

1. Where the revocation, by conveying the land devised, appears in the will itself.

2. Where it appears by the conveyance of the land; or,

3. By the instrument by the force of which the new estate is taken back.

Neither of these methods appears in the will, nor in the instrument of conveyance, or reconveyance, before us. The conveyance of the land devised is not, of itself, a revoking act. It revokes the devise by necessary implication, while the title of the land remains out of the testator, because it renders the will inoperative upon the subject-matter; and no revocation is allowable by way of implication, except from necessity. 1 Redfield Wills, 338, par. 12. Mr. Redfield says: "We think such reasonable doctrine will meet with no resistance in this country."

The reconveyance of the land to the testator left the title in him, at the time of his death, as it was when he made the devise, and thus restored the operative power of the will over the subject-matter. The testator performed no revoking act according to the statute, and the will at the time of his death was not revoked by necessary implication. We think, therefore, that it is still in force. This view seems to us to be in harmony with the English decisions since the statute of 1 Victoria, above cited, and with the American decisions in the states which have statutes similar to our code. Mr. Redfield says,

that " according to the present English statute, and those of most of the American states, it is only necessary that the will shall be so expressed, in order to operate upon such estate as the testator may have at his decease, and it is not material even as to real estate, that he should be seized of the same estate at the time of executing the will, since the instrument will operate upon any estate, coming fairly within its terms, in which the testator is seized of a disposable interest at the time of his death." Vol. 1, p. 337, par. 11.

It has been plausibly urged that, under sec. 8, the new estate taken back must be the same as that conveyed away, and that the taking back must be done by the same instrument as that which conveys it away, or, if by a separate instrument, at the same time, so that the two instruments shall constitute but one agreement, claiming that, if the title of the property is out of the testator, even for an instant of time, after making the devise, the will as to that is thereby revoked, and can never thereafter be made operative upon the same subject-matter without a republication by the testator; but we can perceive no difference in principle, whether the estate is taken back at the same time it is conveyed away, or at any time afterward, so that it is within the operation of the will at the time of the testator's death. The statute does not require, either in words or by implication, that the new estate taken back shall be the same as that conveyed away; nor does it require that both acts shall be done at the same time and by one transaction. It is our duty, therefore, to construe the statute liberally in support of the will. The opposite construction would be strict—a construction applicable to penal statutes and statutes in derogation of common right—and would defeat the intention of the testator in his will, pervert the intention of the legislature in the law, and bring back upon us the mischief of a line of decisions manifestly unjust, "founded upon artificial and absurd reasoning," so heartily denounced by Lord MANSFIELD.

The judgment is affirmed.

BUSKIRK, C. J., having been of counsel, was absent.

WORDEN, J.—Action by the appellants against the appellees, for the partition of certain lands lying in Lawrence county, of which Jacob Woolery, the elder, died seized. The deceased left a widow, who took one-third of the land, she having elected not to take under the will hereinafter mentioned. The deceased also left children and grandchildren. Joseph Woolery, one of the appellees, is one of the children, and Emily Woolery, the other appellee, is one of the grandchildren, she being the child and only heir of Jacob Woolery, Jr., who was a son of the elder Jacob Woolery.

The appellees claimed the entire land in controversy, to the exclusion of the other heirs (except the one-third which went to the widow), by virtue of a will executed by said Jacob Woolery, the elder.

The claim of the appellees was allowed on the trial of the cause by a jury, and judgment was rendered accordingly, a motion for a new trial on behalf of the appellants having been overruled, and an exception taken.

The question involved is properly saved. The material facts necessary to an understanding of the question are as follows:

On November 2d, 1853, Jacob Woolery, the elder, executed his will, containing various provisions for his wife, children, and grandchildren, and, amongst other provisions, he specifically devised to his two sons, Joseph Woolery and Jacob Woolery, Jr., at the death of their mother, Hannah Woolery, the land in controversy, with all the stock of every kind, share and share alike. Afterward, on January 23d, 1858, the testator, in conjunction with his wife, executed a conveyance of the lands in fee to Joseph Woolery, and took from him a bond or agreement in writing for the support and maintenance of the testator and his wife during their lives. Still later, on October 28th, 1859, some disagreement or misunderstanding having arisen, as is to be inferred from the evidence, Joseph Woolery reconveyed the land to his father, and the bond which he had entered into for the support of his father and mother seems to have been destroyed. The will

was at no time republished after the execution of the conveyance by the testator to Joseph Woolery.

Thus the property was conveyed by the testator to Joseph Woolery more than four years after the execution of the will; and Joseph retained the property a little over a year and nine months before he reconveyed it to his father.

The question arises, whether, under these circumstances, the devise of the property to Joseph and Jacob Woolery, Jr., was revoked by the conveyance thereof by the testator to Joseph.

We have the following statutory provisions bearing upon the question. 2 G. & H. 553:

" Sec. 8. If, after having executed a will, devising any property, any testator shall make a conveyance of his interest therein, and shall take back a new estate therein, such new estate shall pass by his will to the person to whom the original estate or interest was devised, unless it shall appear from such will, or by the conveyance of his estate, or interest therein, or by the instrument by the force of which such new estate is taken back, that the testator intended that such conveyance should operate as a revocation of such devise.

" Sec. 9. A conveyance, settlement, deed, or other act of a testator, by which his estate or interest in property previously devised by him shall be altered, but not wholly divested, shall not be deemed a revocation of such devise; but the same shall pass to the devisee or legatee, the actual estate or interest of the testator, which would otherwise descend to his heirs; unless such devise shall be otherwise revoked, or unless in the instrument by which such alteration is made, the intention is declared that it shall operate as a revocation of such previous devise; but if, in any case, the provisions of the instrument by which such alteration is made, are wholly inconsistent with the terms and nature of such previous devise, such instrument shall operate as a revocation thereof, unless such provisions depend on a condition or contingency, and such condition be not performed, or such contingency do not happen."

There are three points to be considered in the construction of all remedial statutes, the old law, the mischief, and the

remedy ; that is, how the common law stood at the making of the act ; what the mischief was for which the common law did not provide ; and what remedy the legislature has provided to cure the mischief. 1 Bl. Com. 87.

There can be no doubt that before the present statute the alienation of land by a devisor, after the execution of a will devising it, operated as a revocation of the devise. The law required that the same interest which the testator had when he made the will should continue to be the same interest, and remain unaltered to his death. The least alteration of that interest was a revocation. 4 Kent Com. 530. See, also, *Adams* v. *Winne,* 7 Paige, 97 ; *Walton* v. *Walton,* 7 Johns. Ch. 258 ; *Herrington* v. *Budd,* 5 Denio, 321 ; *Beck* v. *McGillis,* 9 Barb. 35 ; *McNaughton* v. *McNaughton,* 34 N. Y. 201.

A conveyance of property by the devisor to the devisee revokes the devise. *Case of Kean's Will,* 9 Dana, 25.

" The cases," says Chancellor KENT, " have been investigated and discussed with the utmost research and ability by the courts of law and equity, and the principle again and again recognized and confirmed, that by a conveyance of the estate devised the will was revoked, because the estate was altered, though the testator took it back by the same instrument, or by a declaration of uses. The revocation is upon the technical ground that the estate has been altered, or new modelled, since the execution of the will." 4 Kent, 530.

The case of *Goodtitle* v. *Otway,* 7 T. R. 395, reported also in 1 Bos. & P. 576, is a leading and important one on this subject.

The same question was involved in the case of *Cave* v. *Holford,* 3 Ves. 650, where the subject was exhaustively examined.

For the purpose of showing what was decided in these cases, and of ascertaining as far as may be, what is meant by taking back an estate, I extract the syllabus of the case reported in the Term Reports :

" A. seized in fee, by marriage articles, agreed to settle his estates so as to secure his intended wife's jointure, and the portions of younger children, and subject thereto upon his

Woolery *et al. v.* Woolery *et al.*

eldest son in tail male ; then he devised those estates in fee, in case he had no issue and subject to any jointure he might make ; and afterward conveyed them by lease and release to trustees and their heirs in pursuance of the articles, in trust for himself in fee till the marriage, and afterward for the various. purposes of the marriage articles, and for default of the issue of the marriage, and subject to a term for securing the jointure, to the use of himself in fee; he afterward married and died without issue ; held, that the deed of settlement, whereby he departed with the whole estate devised, operated as a revoca-cation of the will, though he took back a fee by the same instrument, and though it was consistent with the provisions of the will ; and that it made no difference that with respect to one of the estates the conveyance in fee to the trus-tees was merely for the purpose of creating a term to secure his wife's jointure, and the settlor took back the fee again sub-ject to that term."

There are many cases cited in those above referred to, hold-ing that where one has executed a devise, and has afterward conveyed the whole estate, and has by the same instrument taken back an estate in the property devised, the devise was revoked. ·I select, as an illustration of the whole, the follow-ing from the case reported in Vesey, at page 652 :

" 1 Roll. Ab. 615 states, that if a man devise land to I. S., and after makes a feoffment in fee to a stranger to the use of himself in fee, though he is in of his old estate, yet it seems this is a revocation ; for his intent is to have it by the new limita-tion ; and by the feoffment he passes the estate, and the stat-ute revests it in him ; which is as a new purchase. Lord HARD-WICKE, 3 Atk. 748, considers this as a settled point ; so that it does not rest upon Lord ROLLE's saying it seems to be a revocation."

The opinion of the court was not unanimous. EYRE, C. J., did not agree in all respects with the majority of the court ; but he conceded, as I understand a passage in his opinion, that if the estate came back to the devisor by reconveyance, the devise would be revoked. He says, in the case in Vesey,

p. 670 : " My brother ADAIR laid it down as a rule, that taking back the estate through the channel of a trustee altered the estate. Taken literally it is true ; and understanding it to be by reconveyance ; which is understood upon the passage in Co. Lit. 12 *b.*, as it must be, because he speaks of its altering the course of descents ; but if it is meant to extend to the use, which results upon the conveyance, it is begging the question ; and the proposition seems wholly inapplicable to a resulting use ; which is collateral to and arising out of the estate of the feoffor ; which is taken back by the statute, and is as if never disposed of ; and, secondly, the use is not altered, by whatever channel it results. It is the old use, and when united to the seizin becomes the old estate ; and it is a contradiction in terms, that the old use and the old estate are an altered use and an altered estate."

The phrase, take back an estate or a new estate, has never been applied, so far as I am aware, to a subsequent reconveyance. The passage which I have quoted from EYRE, C. J., militates against such use of the terms.

I take it, from the authorities to which I have referred, that the principal, if not the sole application of the term, has been to cases where the estate has been taken back by the same instrument by which it was conveyed. The authorities cited furnish abundant illustrations of such application. But I see no good reason why it may not be appropriately applied to cases where the estate is taken back by a separate instrument executed concurrently with the conveyance, and as a part of one entire transaction.

The circumstances may be observed in all the cases where the term has been applied, so far as I am advised, that the conveyance and the taking back have been but one simultaneous transaction.

With this review of the law as it stood at the time of the passage of the statute above set out, I am prepared to enter upon the work of interpretation. The evil to be remedied was the legal rule that the conveyance of property by a testator,

after having devised it, operated to revoke the devise, though an estate was taken back by the instrument by which the conveyance was made. To remedy this evil, the legislature provided, that "if, after having executed a will, devising any property, any testator shall make a conveyance of his interest therein, and shall take back a new estate therein, such new estate shall pass by his will to the person to whom the original estate or interest was devised, unless," etc.

Keeping in view the evil to be remedied, and the remedy provided, I think it quite clear that the legislature intended to so far change the common law rule, as that if the estate is conveyed, and a new estate taken back, either by the instrument of conveyance or by a separate instrument, as a part of one entire transaction, and in pursuance of one entire arrangement and understanding, the devise is not to be regarded as revoked, but the new estate shall pass to the devisee. On the other hand, I do not think it was intended that if, after making a devise, the testator conveys away the subject of the devise, without any agreement as to taking back a new estate, but he afterward repurchases it, or has it reconveyed to him as a separate and independent transaction, the devise should not be revoked.

The phrase, "shall take back a new estate therein," clearly implies that the taking back is to be a part of the transaction and understanding in pursuance of which the conveyance is made. A subsequent reconveyance to the testator, made solely upon a subsequent agreement or understanding, and not in pursuance of the contract, agreement, or understanding, by virtue of which the original conveyance was made, is not a taking back either in a legal or ordinary sense. If a man sell a horse, and afterward repurchase him, he does not take him back, but he buys him. He takes him back if he receives him again by virtue of stipulations in the original contract of sale.

There is much propriety in a provision that if a devise is made, and the testator afterward conveys away the property, but as a part and parcel of the same transaction takes back a

new estate therein, as if he conveys it to trustees in fee for the use of his wife for life, with remainder over to himself and his heirs, the devise should not be regarded as revoked, but that his interest should go to the devisee. Such conveyance is not utterly inconsistent with an intent that the devisee shall take something by the devise. But where he conveys away the property wholly and absolutely, an intent is clearly manifested to revoke the devise, and it at once becomes revoked; and being thus revoked, there is an incongruity in holding that it can be revived by the repurchase of the property. A devise cannot be revoked or not revoked, according to the event of a future contingency.

If a testator, after making a will, should convey away unconditionally the property devised, and should afterward repurchase it, and if he should desire the property to go according to the devise, he should republish his will or execute another. The observations of ROOKE, J., in the case of *Cave* v. *Holford, supra,* are appropriate here. He says:

" In vindication of the rule, however, I must observe some circumstances : First, it is in favor of the heir at law; who is always an object of legal favor. Secondly, it is ancient. * * * And, thirdly, it can not operate upon one that is *inops consilii,* who has no opportunity of being advised upon the subject; for if a man is sufficiently strong in mind and body, and well enough assisted to execute a solemn deed, which passes away his legal interest, he surely may, if he pays attention to it, republish his will; and it is a plain, simple, and perfectly intelligible rule; for it is only, that if he will not run the risk of being within some of the exceptions, he must republish his will after making the conveyance. If where there is so plain a rule, the party omits to conform to it, the disappointment of the devisee is to be attributed, not to the rigor of the law, but the negligence of the parties; who will either take no advice, or such as is likely to mislead them."

The construction which I place upon the eighth section of the statute above quoted, having in view the law as it stood, is, that the conveyance by the testator of his entire interest in

the property devised, without any contract, agreement, or understanding by which he is to take back any estate therein, revokes the devise, though the property devised may be subsequently reconveyed to him. And this is in harmony with the ninth section; for in that section it is provided, in substance, that if there be any settlement, deed, or other act of the testator by which his estate or interest in property previously devised shall be altered but not wholly divested, such instrument shall operate as a revocation of the devise, if the provisions thereof are wholly inconsistent with the terms and nature of the previous devise. A conveyance of the entire interest of the testator, without any agreement or stipulation for taking back any interest in the property devised, is wholly inconsistent with the terms and nature of the previous devise. Any other construction than that which I have given sec. 8 would furnish one rule where the property is wholly conveyed away, and a different one where it is only partially conveyed.

If the legislature had desired that wills should operate upon all property which the testator had the power to dispose of at the time of his death, it might have been easily provided for. The English statute of 1837 (see 1 Redf. on Wills, 332) provides, "that no conveyance of real estate made after the execution of a will, or other act in relation to such estate, shall prevent the operation of the will upon such portion of the estate, as the testator may have power to dispose of at his death."

This statute is totally dissimilar to ours and furnishes us no criterion of decision.

I am of opinion, for the reasons herein stated, that the conveyance by Jacob Woolery, the elder, of the property to his son Joseph as before stated, revoked the previous devise of the property, and that the subsequent reconveyance by Joseph to his father did not revive it; and that consequently upon the death of Jacob, the elder, the property descended to his heirs at law. The revocation of the specific devise, however, was not a revocation of the entire will. The will otherwise can stand. Sec. 19 of the statute of wills (2 G. & H. 555) has

reference to the entire revocation of wills, and does not affect the question involved in this case.

For the foregoing reasons, the judgment below should, as I think, be reversed.