Forbing *et al. v.* Weber.

Filed Jan. 22, 1885.

---

No. 11,088.

FORBING ET AL. *v.* WEBER.

WILLS.—*Revocation.—Destruction.—Insanity.*—The destruction of a will by the maker during a temporary fit of insanity is not an act done with his consent, and does not revoke it, nor, under the statute, R. S. 1881, section 2609, prevent its proof and establishment as one destroyed.

SAME.—*Probating Will.—Evidence.—Copy.*—In proceedings to prove and establish a will destroyed, proof that the testator caused it to be recorded in the recorder's office, and that the record there found is a correct copy of the original, with evidence given by the attesting witnesses that the original was duly executed, is sufficient to show that the copy as recorded is a true copy, and it is then admissible in evidence.

PRACTICE.—*Competency of Witness.—Evidence.—Harmless Error.*—If a witness be competent as to any matter in issue, there is no available error in overruling a general objection " that he is incompetent," and in any event, if he testify only to matters which are established by other evidence without conflict, the error, if any, is harmless.

From the Adams Circuit Court.

*D. Studabaker, C. M. France, — Merryman* and *W. J. Vesey,* for appellants.

*B. Harrison, W. H. H. Miller* and *J. B. Elam,* for appellee.

ELLIOTT, J.—The complaint of the appellee prays that a will alleged to have been executed by John Tomellier, deceased, and afterwards lost or destroyed, may be admitted to probate.

It is argued that the complaint is bad for the reason that it is not averred that the will was not destroyed for the purpose of revoking it, but, we think, facts are averred which authorize the conclusion of law that it was not revoked. In one

place it is alleged that the will was destroyed by the testator while he was in a state of temporary insanity, and not of sound mind, and that when he recovered from the fit of temporary insanity, he declared that he had no intention of revoking the will. It is also averred that the testator caused the will to be recorded in the records of the county for the purpose of preserving it, and that he made no subsequent will, but died testate. These facts rebut the presumption that the will was burned for the purpose of working a revocation, and also show that there was no revocation by a subsequent will. As the testator knew that the public records of the county contained an accurate copy of the instrument, it is but reasonable to infer that when he regained his mental capacity he acted upon the presumption that it was not necessary to cause the will to be rewritten. Of course, the recording of the will added nothing to its effect, but, while this is true, it is also true that it preserved an accurate copy, and enabled the original to be reproduced without doubt or uncertainty.

To constitute a valid revocation of a will, two things must concur: 1. The intention to revoke; 2. The act manifesting the intention. *Woodfill* v. *Patton*, 76 Ind. 575; *Runkle* v. *Gates*, 11 Ind. 95; *Woolery* v. *Woolery*, 48 Ind. 523; *Wright* v. *Wright*, 5 Ind. 389; 1 Jarman Wills (5 Am. ed.) 284. A testator who destroys a will in a fit of temporary insanity does not revoke it, for the plain reason that in legal contemplation an insane man can neither form nor manifest an intention; the intention which the law regards is that of a reasoning being, not that of a person bereft of mental power. The authorities all agree that a revocation is not effectual unless executed in the manner required by law, and it is not possible for a man destitute of reason to execute a revocation in that manner, because he is incapable of forming the intention which the law declares is indispensably necessary to the existence of a valid revocation.

We do not deem it necessary to discuss the question as to

the sufficiency of the third paragraph of the answer, for, assuming it to be good, no available error was committed in sustaining the demurrer, because the general denial entitled the appellants to introduce all the evidence that would have been competent under that paragraph.

It has been held in many cases that objections to the competency of evidence must be specifically stated to the trial court and embodied in the bill of exceptions. *City of Delphi* v. *Lowery,* 74 Ind. 520, and authorities cited. It has also been uniformily held that it is not sufficient to state in general terms that evidence is not competent, but that the particulars in which the evidence is alleged to be incompetent must be pointed out with a fair degree of certainty. *Harvey* v. *Huston,* 94 Ind. 527; *Lake Erie, etc., R. W. Co.* v. *Parker,* 94 Ind. 91; *Fitzpatrick* v. *Papa,* 89 Ind. 17; *Cox* v. *Stout,* 85 Ind. 422; *McClellan* v. *Bond,* 92 Ind. 424; *Underwood* v. *Linton,* 54 Ind. 468; *Stanley* v. *Sutherland,* 54 Ind. 339; *Murray* v. *Phillips,* 59 Ind. 56; *Manning* v. *Gasharie,* 27 Ind. 399. The reason which supports the rule, which the cases cited so firmly establish, applies with peculiar force to a case where, like this, the witness is only partially incompetent. If it were conceded that Weber was an incompetent witness as to matters which took place before the testator's death, he was still not altogether an incompetent witness, for he was competent as to matters which occurred after the death of the testator. It seems clear, therefore, that a general statement, made when the witness is offered in such a case as this, that he is not competent, is not sufficiently specific, and that the objection should be specifically made when questions calling for testimony as to matters which occurred prior to the ancestor's death are propounded. Tried by this rule, the objection made below is not such as will present any question for our decision.

But if we are wrong in the conclusion just stated, a reversal can not be adjudged. This we say, because Weber's

Forbing *et al. v.* Weber.

testimony was addressed to a point upon which there was no dispute, and the finding must have been the same upon that point had his testimony been excluded. *Aufdencamp* v. *Smith,* 96 Ind. 328; *Terre Haute, etc., R. R. Co.* v. *Pierce,* 95 Ind. 496; *Rhoads* v. *Jones,* 92 Ind. 328; *Citizens Bank* v. *Adams,* 91 Ind. 280, see p. 288; *Bush* v. *Seaton,* 4 Ind. 522; *Manchester* v. *Doddridge,* 3 Ind. 360; *Parker* v. *State,* 8 Blackf. 292.

The statute provides that 'no will shall be established as lost or destroyed " unless the same shall be proven to have been in existence at the time of the death of the testator; or be shown to have been destroyed in the lifetime of the testator without his consent, or otherwise fraudulently disposed of; nor unless the provisions shall be clearly proven by two witnesses, or by a correct copy and the testimony of one witness." In our opinion, the evidence shows that in legal contemplation, and within the meaning of the statute, the will was destroyed without the testator's consent. It is shown by the testimony of several witnesses, that it was destroyed, with other papers, when the testator was acting wildly, threatening to kill his son-in-law, and while he was engaged in other acts of violence. These witnesses, having stated the facts, declared that in their opinion he was of unsound mind at the time the will was destroyed. If this be true, it follows that he was not legally capable of consenting to any act. An insane man can not be said to consent to anything in the nature of the revocation of a will, for, as we have seen, there can be no revocation unless there is present the intention to revoke, and where there is no mental capacity, there can be no intention within the meaning of the law.

The record contains a copy of the will, and several witnesses testified that the will was executed in the office of the recorder, and two, at least, testified that the testator deposited it there for record. The persons who attested the will as subscribing witnesses testified as to its execution, and others testified that the testator told them that he had left it at the

recorder's office to be recorded. We think that the copy found of record was such as complies with the requirements of the statute. It is immaterial for what purpose the copy was made, for, if the copy is an accurate one, it is sufficient under the statute. When it is shown, as it was here, that the will was executed and deposited for record, and that it was copied in one of the books of record, and this record was read, there was evidence as to its contents independent of the copy itself. This evidence came from more than one witness; it came from the deputy recorder who copied the will into the record, from the witness who went with the testator to the recorder's office, from the witness who testified that the copy was a true one, from the witnesses who testified that the testator told them that the will had been deposited by him for record, and from the witnesses who testified that the original was taken, by the testator from the office of the recorder after it had been recorded. Where a copy is shown to be a true one by the testimony of one witness, and where it is shown to have been copied by the person with whom it was deposited by the testator and by his direction, we do not believe it necessary to prove the exact contents by any other witness, but that it is sufficient if some other witness states in general terms the provisions of the instrument. In the present instance this was done by the witness John Weber.

The record of the will was not competent evidence as a record, for the will was not entitled to go upon record, but it was competent for the purpose of exhibiting a copy of the instrument. It did not have the force of a record, but it did exhibit a copy of the will, and, when proper supplementary testimony was given by the person who made the copy, the instrument as copied was properly read in evidence.

Judgment affirmed.

Filed Jan. 22, 1885.