FLETCHER TRUST COMPANY ET AL. *v.* MORSE.

[No. 28,850. Filed November 8, 1951.]

*Carl E. Stilwell,* of Indianapolis, for appellants.

*Armstrong & Gause; Paul B. Hudson* and *Erle A. Kightlinger,* all of Indianapolis, for appellee.

GILKISON, J.—This action was brought by appellee to obtain a declaratory judgment with respect to a will of one Cheston Lawrence Heath who died a resident of Marion County, Indiana, February 11, 1947, leaving an estate composed of both real and personal property.

Appellants—defendants—put the cause at issue by answer under the rules, admitting some of the averments, denying some and pleading no information as to others.

The cause was tried by the court without the intervention of a jury.

The final judgment was for plaintiff, Morse, that he is a beneficiary under the will along with the appel-

lants, Heath and Caulfield, each of whom are to share alike in the distribution of the estate.

The will with its attestation and notorization admitted in evidence as Exhibit A, is as follows:

"Last Will and Testament of
Cheston Lawrence Heath

---

"I, Cheston Lawrence Heath being of sound mind and conscious of the redeeming Love of my Lord, Jesus Christ. Do hereby will and bequeath all my wordly goods both real and personal after all my just debts be paid.

To

"John Allan Heath _____Son
Howard Franklin Caulfield_____Foster Son
x x x x x x x x x x x x x x x x x x x x x x x x x x x
"To share all and share alike.
"Witness my hand this 20th., day of January 1943
"Cheston L. Heath

"Witness
Charles S. Heckingbottom
Harry H. Gunkle

OVER
x x x x x x x x x x x x x x
x x x x x x x x x x x
x x x x x x x x x x x x

---

"STATE OF INDIANA }
COUNTY OF MARION } SS:
        Subscribed and sworn to before me a notary public in and for said County and State this twentieth day of January, 1943.
                        Audrey Arline Neese
                                Notary Public
"My commission expires: May 6, 1946"
        (Seal)

It was stipulated by the parties that the signature to a typewritten statement marked "Exhibit B" is the signature of the decedent, Cheston L. Heath. This exhibit admitted in evidence is as follows:

### "ADDITION TO LAST WILL AND TESTIMENT

"Under no condition do I wish the third party Lyle R. Morse

"~~re un~~

   as states in the will to be included in this will.

"~~to~~

"Two and two only I lea ve the estate. . John A. Heath my Son and Howard Franklin Caulfield my foster ~~son~~ to share all, and each alike.   .

CHESTON L. HEATH

"Date January 10, 1947."

It was stipulated that a witness to the will, Charles Spencer Heckingbottom, was deceased at the time of the trial. His deposition had been taken by the plaintiff, pursuant to notice, and was produced in evidence at the trial without objection.

It was further stipulated that all matters admitted by the pleadings are to be considered as facts in the case.

It is conclusively shown by the evidence that decedent wrote the will in question with a typewriter in the choir room of the church, brought it into the Sacristy where the witnesses Heckingbottom and Gunkle were and had them sign it as witnesses. At that time it was in the same words and figures as it now appears except where the line is blacked out by ink lines following the line "Howard Franklin Caulfield____Foster Son," and were the words: "Lyle R. Morse____Foster Son." At the time the will was wit-

nessed by the two attestants, the words were not blacked out. This partial mutilation of the will has occurred since its execution.

There is no evidence and no stipulation in the record indicating where the will was kept from the date of its execution, January 20, 1943, to the time it was offered for probate, February 14, 1947.

There is no evidence in the record as to who wrote the body of Exhibit B, which was admitted in evidence without objection. It was stipulated that the name "Cheston L. Heath" at the bottom of this exhibit was in the handwriting of the testator. There is no evidence or stipulation when this exhibit was signed, other than the typewritten date several lines below the signature. There is no evidence or stipulation as to whether the body of the exhibit or the date was on the paper when the testator's signature was placed thereon. There is neither evidence nor stipulation as to where Exhibit B was found after testator's death, or where it had been kept from the typewritten date thereon until it was presented in evidence. The evidence does show that neither of the attesting witnesses ever had seen Exhibit B until it was presented to them while they were testifying.

Only one question is presented in this proceeding, as follows: Was the will revoked in whole or in part by reason of the attempted mutilation thereof by blacking out the name of appellee as one of the beneficiaries thereof, and the existence of "Exhibit B" in manner and form as admitted in evidence? By its general finding and judgment in favor of appellee-plaintiff the trial court has answered this question in the negative.

In this state the right to dispose of property by will is created by statute, and the manner in which a

will shall be executed is wholly governed by statute, Sec. 7-201, Burns' 1933. Consequently the state may limit the right, and provide the method of the execution of a will as it may see fit. *Porter* v. *Union Trust Co.* (1915), 182 Ind. 637, 644, 108 N. E. 117, Ann. Cas. 1917D 427; *Hertford* v. *Harned* (1916), 185 Ind. 213, 218, 113 N. E. 727; *Tinsley* v. *Carwile* (1937), 212 Ind. 675, 679, 10 N. E. 2d 597. See also *Aldred* v. *Sylvester* (1916), 184 Ind. 542, 547, 111 N. E. 914.

There can be no doubt that the will in question was duly and properly executed when it was witnessed by Heckingbottom and Gunkle on January 20, 1943. Having caused his will to be duly executed on that date there can be no presumption that testator later changed his mind with respect to the disposition of his property as made in the will. The contrary presumption prevails until it is overcome by competent evidence of probative value. There is no evidence that the will was in testator's possession at any time from the date of its execution until the date it was offered for probate, or that he ever had it in his possession after its execution. This absence of essential evidence cannot be supplied by any presumption. Hence there is nothing in the record showing that the act of obliterating the name of appellee as a beneficiary in the will was the act of the testator, unless this is sufficiently shown by Exhibit B.

However, for argument only, assuming that Exhibit B is a genuine document written and signed by the testator, what is its legal effect? If given effect as written, it would remake the will by removing appellee as beneficiary, and giving the share allotted to him by the will, to the appellants, John Allan Heath and Howard Franklin Caulfield. Thus

we would have not only the revocation of the will in part, but a remaking of the whole, without any compliance with the safeguards provided by the statute. As heretofore noted this cannot be done. *Wright et al.* v. *Wright* (1854), 5 Ind. 389, 390; *Pfaffenberger* v. *Pfaffenberger* (1920), 189 Ind. 507, 511, 127 N. E. 766.

In this state the revocation of a will in whole or in part is wholly governed by statute. Sec. 7-301, Burns' 1933. *Pfaffenberger* v. *Pfaffenberger* (1920), 189 Ind. 507, 511, 127 N. E. 766, *supra; Woolery et al.* v. *Woolery et al.* (1874), 48 Ind. 523, 526; *Wright et al.* v. *Wright* (1854), 5 Ind. 389, 390, *supra.* This statute provides that a written will may not be revoked in whole or in part except in one of two ways mentioned thus: (1) "Unless the testator, or some other person in his presence and by his direction, with intent to revoke, shall destroy or mutilate the same;" (2) "or such testator shall execute other writing for that purpose, signed, subscribed and attested as required in the preceding section." The preceding section referred to is now Sec. 7-201, Burns' 1933. Both sections were enacted in 1852 and are respectively Sections 18 and 19 of Chapter 11, an Act prescribing, among other things, how a will shall be executed and how it shall be revoked. See Vol. 2, Revised Statutes of 1852, page 314.

Exhibit B was not attested by two witnesses as required by Sec. 7-201, which is made a part of Sec. 7-301 providing the two ways by which a will may be revoked. For the reason it was not so attested, it did not revoke the will in whole or in part, or otherwise affect it. This holding is consistent with the cases in Indiana.

A terse statement of the essential of a revocation is expressed by Elliott, J. thus:

"To constitute a valid revocation of a will, two things must concur: 1. The intention to revoke 2. The act manifesting the intention."

*Forbing et al.* v. *Weber* (1885), 99 Ind. 588, 589; *Woodfill et al.* v. *Patton et al.* (1881), 76 Ind. 575, 579, 40 Am. Rep. 269; *Woolery et al.* v. *Woolery et al.* (1874), 48 Ind. 523, 526, *supra; Runkle* v. *Gates* (1858), 11 Ind. 95, 99; *Pfaffenberger* v. *Pfaffenberger* (1920), 189 Ind. 507, 511, 127 N. E. 766, *supra; Tinsley* v. *Carwile* (1937), 212 Ind. 675, 679, 10 N. E. 2d 597, *supra.*

There is not sufficient evidence in the record indicating that the testator ever had an intention to revoke his will in whole or in part. The mere fact that ██ appellee's name as a beneficiary in the will had been inked out or otherwise mutilated when the will was probated is not sufficient in itself to make a prima facie showing of such intention on the part of the testator, nor is such fact, in itself, sufficient to make a prima facie showing that the mutilation was done by testator to effect his intention to revoke the will either in whole or in part. Indeed there is no evidence in the record indicating that this mutilation was done by the testator, or by another "person in his presence and by his direction." As before stated this lack of evidence cannot be supplied by either presumptions or inferences. A fact that is in issue in a case must be established by evidence either direct or circumstantial or by inferences properly drawn from such evidence. But neither courts nor juries have a right to presume the existence of such a fact. *Prudential Ins. Co. of America* v. *VanWey* (1945), 223 Ind. 198, 203, 59 N. E. 2d 721; *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1939), 216 Ind. 545, 549, 24 N. E.

2d 284; *Kaiser* v. *Happel* (1941), 219 Ind. 28, 31, 36 N. E. 2d 784.

The parties have discussed at length the proposition whether or not a will may be partially revoked by mutilation under the statute cited (7-301, Burns' 1933) in Indiana. For the reasons given we do not think that question is presented in this appeal.

Finding no error in the record the judgment of the trial court is affirmed.

NOTE.—Reported in 101 N. E. 2d 658.