IN THE MATTER OF THE ESTATE OF GRANGER, DECEASED, ETC., ET AL. *v.* GOSPORT CEMETERY ASSOCIATION, ET AL.

[No. 18,498. Filed March 30, 1954. Rehearing denied May 14, 1954. Transfer denied September 15, 1954.]

· *Lee W. Kirkpatrick,* of Spencer, for appellants.

*Edwin K. Steers,* Attorney General, *Lloyd C. Hutchinson,* Deputy Attorney General, for Indiana School for Blind and *Leo Kriner,* for Board of Commissioners of Marion County, for appellees.

KENDALL, P. J.—Appellants, who were unsuccessful plaintiffs below, brought this action to resist the probate of the pretended last will and testament of Anna Belle Myers Granger, deceased. Trial by court resulted in finding and judgment adverse to appellants.

It is contended by appellants in their motion for new trial that the decision of the court was not sustained by sufficient evidence and was contrary to law. The assignment of errors allege that the court erred in overruling appellants' motion for new trial.

The judgment being for appellees, the specification that the decision was not sustained by sufficient evidence was inappropriate. A negative verdict or decision may not be attacked upon the ground that there is a lack of evidence to support it. *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155; 14 N. E. 2d 905; *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. 10; 51 N. E. 2d 474.

The question presented in this appeal is whether decedent's will was revoked during her lifetime by mutilation; thus dying intestate rather than testate.

The evidence disclosed that on September 22, 1945, decedent executed the will in question in her attorney's office; that on said date, she took the will with her at which time there were no ink or pencil marks thereon,

except for signatures; that on December 10, 1945, a codicil was executed by decedent in the same attorney's office, at which time she took the will and codicil with her; that decedent was removed from her home by a neighbor prior to her death, which occurred on February 21, 1953; that within two or three days thereafter, Clarence Baker, a neighbor and friend, found the instrument in question in decedent's home; that the torn page (codicil) was removed, which instrument he delivered to the attorney preparing the will; that the decedent lived alone; that the Bakers who were neighbors and close friends of the deceased had no knowledge of relatives visiting decedent; that the decedent had told Mr. Baker not much over a year prior to her death that she had a will.

The will, when offered for probate, had ink and pencil markings thereon, some items contained diagonal lines, underlined lines, marginal marks, numbers before and after the word, "item," re-numbering of certain items, the figure $200.00 written above $100.00 which was devised to the Gosport Cemetery; that the signatures of the decedent and the attesting witnesses remained unchanged.

We are called upon to decide whether the markings on the will constituted revocation thereof within the meaning of §7-301, Burns' 1933 (Supp.), as follows:

> "No will in writing, nor any part thereof, except as in this act provided, shall be revoked, unless the testator, or some other person in his presence and by his direction, with intent to revoke, shall destroy or mutilate the same; . . ."

It is well established in this state that to revoke a will under §7-301, *supra,* it is necessary that there be a concurrence of two things—(1) the intention to so revoke, and (2) the act manifesting the intention by

physical destruction or mutilation. *Roberts* v. *Fisher* (1952), 230 Ind. 667; 105 N. E. 2d 595; *Fletcher Trust Co.* v. *Morse* (1951), 230 Ind. 44; 101 N. E. 2d 658; *Tinsley* v. *Carwile* (1937), 212 Ind. 675; 10 N. E. 2d 597; *Woodfill et al.* v. *Patton et al.* (1881), 76 Ind. 575; 40 Am. R. 269.

The appellants cite the case of *Tinsley* v. *Carwile, supra,* to support their theory that decedent revoked the will by such markings. In that case, the word "void" was written across the word "will"; two marks were drawn across the title of the will; two diagonal lines across the front page in such a manner that they intersected and crossed each sentence on the page; the word "void" written on the margin thereof, beneath which appeared the testator's initials. The second page, likewise, had diagonal lines, which lines crossed the decedent's signature and included the attesting clause but did not include the signatures of the witnesses.

Appellants also cite the case of *In re Patton's Will* (1950), 121 Ind. App. 256; 95 N. E. 2d 311.

The evidence in the case at bar differs considerably from that presented in cases cited by appellants. The *Patton* case, *supra,* presents a situation where the decedent had torn out of the will his signature thereto and had drawn lines across the attesting witnesses' signatures. The words, "New Will, 1944," were written thereon. Undoubtedly, such facts as there presented show both an intention to revoke and revocation. The word mutilate, as used by the authorities of the state, has reference to something less than total destruction. The manner of mutilation is not of itself of controlling importance when considered with the facts of the particular case under consideration.

The requirements of the statute in reference to the revocation of wills must be strictly construed and what-

ever is done by testator to be effective as a revocation must · be done with the intention of revoking the will. The act, without the intention, will not suffice. They must concur. *Morris* v. *Bullock* (1937), 185 Ga. 12; 194 S. E. 201; 115 A. L. R. 700, 711, citing *Tinsley* v. *Carwile, supra.* Mere intention to revoke a will does not, in itself, render a will inoperative, neither does the belief of the testator that the will has been destroyed or otherwise revoked affect its validity.

Jarman On Wills, 6th Ed., Chap. 7, § 2(c), is as follows:

"It is not, however, to be inferred from this case, that the mere intention or even attempt, of a testator to burn, tear, or destroy his will, is sufficient to produce revocation, within the meaning of the Statute of Frauds, or the Wills Act; for, the legislature having pointed out certain modes by which a will may be revoked, it is not in the power of the judicature, under any circumstances, to dispense with part of its requisition, and accept the mere intention or endeavour to perform the prescribed act, as a substitute or equivalent for the act itself, though the intention or endeavour may have been frustrated by the improper behaviour of a third person." See also *Wright* v. *Wright* (1854), 5 Ind. 389.

The appellants contend that the markings on the will raise a presumption of the decedent's intent to revoke. When considered with the factual situation, we do not agree with this contention. Conversely, it could likewise be argued that even though the decedent made the marks in question, she retained the custody of the will until approximately the time of her death, had never removed or scratched out her signature nor those of the attesting witnesses, and that such facts would create an inference that she

did not intend to so revoke the will. The right to dispose of property by will is created by statute as well as the manner in which a will should be executed. Sec. 7-201, Burns' 1933 (Supp.). It is not contended that this will was not properly executed.

In the case of *Fletcher Trust Co.* v. *Morse, supra,* the Supreme Court, through Judge Gilkison, said:

> "Having caused his will to be duly executed on that date there can be no presumption that testator later changed his mind with respect to the disposition of his property as made in the will. The contrary presumption prevails until it is overcome by competent evidence of probative value."

Such intention to revoke is a question of fact for the trial court to determine. Intent must be as clear and unequivocal as was the original intention to devise and bequeath. Thompson On Wills, 3rd Ed., § 155.

The absence of evidence as to intent cannot be supplied by presumption or surmise. The fact that there were markings and interlineations on the will in question, when considered with the attendant facts and circumstances, are not in themselves sufficient to make a *prima facie* showing of intention on the part of the decedent to revoke the will.

There must not only be an act of revocation (which the court did not find), but such act of revocation must be such as the statute recognized as proper manifestation of intention to revoke. The act will not operate as revocation, no matter how strongly and unequivocally it may show an intention to revoke, unless it is such an act as prescribed by statute. *Woodfill et al.* v. *Patton et al., supra.*

Applying the general rule, this court cannot say that the evidence leads inescapably to the sole conclusion that the judgment should have been in favor of the

appellants. There was sufficient evidence of probative value, parol and documentary, which warranted the trial court in reaching his decision. Reasonable men might have differed in their conclusions as to what was proved; therefore, judgment is affirmed.

Note: Reported in 118 N. E. 2d 386.

---

## ON PETITION FOR REHEARING

KENDALL, P. J.—In appellants' petition for rehearing, he alleges that this court in its original opinion failed to give a decision as to whether the trial court erred in applying the doctrine of dependent relative revocation.

This proposition was considered and decided in the original opinion under the appellants' assignment of errors.

However, to avoid doubt, the court now directs the appellants' attention to the court's general finding number three where the court found that the testatrix probably intended at some future time to execute a new will and that the markings on the will, if they were made by decedent, were so made for the purpose of indicating that if and when a new will was executed that she would then make some changes. This finding was based upon the theory known and recognized in this state as dependent relative revocation.

"The doctrine of dependent relative revocation is functionally a rule of interpretation of intention. It has behind it a general acceptance in the English cases and a rather wide and respectful acceptance in principle in the United States. The rule seeks to avoid intestacy where a will has once been duly executed and the acts of the testator in relation to

its revocation seem conditional or equivocal." *In re Macomber's Will* (1949), 274 App. Div. 724, 87 N. Y. S. 2d 308.

This doctrine is recognized in Indiana in the case of *Roberts* v. *Fisher* (1952), 230 Ind. 667, 676; 105 N. E. 2d, 595, 599 (cited in original opinion) in which the court said:

> ". . . The destruction of a will without the intent to revoke would not work a revocation. The doctrine of dependent relative revocation is recognized under our statutes."

The appellants rely upon the case of *Roberts* v. *Fisher, supra,* to substantiate their contention that this doctrine is not applicable to the evidence of the instant case; however, in the Roberts case, *supra,* it concerned a mutilated copy of a will found in the home of the testatrix with devises and bequests stricken out and the signature of the testatrix and witnesses stricken out and the court said that it was in such condition that it would of itself be presumptive of revocation, and the court held that in view of the evidence there adduced that it established that the testatrix had destroyed her will with the intention to revoke it unconditionally and not conditioned on the making of a new will. We do not have those facts in the instant case.

Considering the facts and reasonable inferences therefrom most favorable to the appellee, this court cannot say that there was not sufficient evidence to sustain the application of the doctrine of dependent relative revocation, notwithstanding the fact that it is generally held that this doctrine should be applied cautiously. In all fairness, the acts of the decedent may be said to be both conditional and equivocal. Accordingly, the petition for rehearing is denied.

NOTE: Reported in 118 N. E. 2d 386. Rehearing denied 119 N. E. 2d 437.