SEARLES *v.* HAYNES

[No. 18,671. Filed October 21, 1955. Rehearing denied December 2, 1955. Transfer denied June 28, 1956.]

*Graham W. McGowan,* of South Bend, for appellant.

*Warren E. McGill* and *Seebirt, Oare & Deahl,* of South Bend, for appellee.

KENDALL, P. J.—Appellant brought this action against appellee for dissolution of partnership, accounting and appointment of a receiver growing out of a business transaction involving a funeral business. Appellee filed answer and counterclaim praying the court to decree that appellant was not engaged in any business relationship, partnership or joint venture with appellee.

Cause submitted to the court for trial, resulting in a judgment favoring appellant for one-half of funds on deposit in a joint bank account of the parties in the sum of Two Thousand, Eight Hundred Fifty-three Dollars and twenty-one cents ($2,853.21); beyond that as a partnership between the parties, the transaction was illegal and no partnership existed.

Appellant's motion for new trial is based upon the following specifications: (1) that the decision was contrary to law; (2) that the decision was not sustained by sufficient evidence; (3) that the amount awarded was substantially less than the facts and evidence show appellant's pecuniary loss to be; (4) and (5) misconduct of prevailing party; (6) newly-discovered evidence.

Assignment of errors is that the decision of the court is contrary to law and is not sustained by sufficient evidence. The latter (not sustained by sufficient evidence) is not a proper assignment since the appellant in the court below had the burden of proof. A negative verdict or decision may not be attacked upon the grounds that there was a lack of evidence to support it. *Est. of Granger* v. *Gosport Cem. Assn.* (1954), 124 Ind. App. 686, 118 N. E. 2d 386 (T. D.); *Schrenker, Executor, Etc.* v. *Grimshaw, et al.* (1954), 124 Ind. App. 493, 119 N. E. 2d 432.

Specifications three and five are not argued in appellant's brief, neither is authority cited in support thereof and are waived.

The Legislative enactments pertinent to a decision in this case are Chapter 165, Acts of 1939, being §63-717, Burns' 1951 Replacement, and Chapter 38, Acts of 1949, being §63-722, Burns' 1952 Replacement.

In view of the facts as presented, we shall first direct our attention to the business transaction from March 25, 1943, to the effective date of the 1949 Act, which Act amended, Chapter 165 of the 1939 Acts, which amendment is:

". . . When more than one (1) person propose(s) to engage in the funeral directing business as partners, it shall be necessary for one (1) of such persons to secure a license under this act to operate as a funeral director, except *however that no silent partner or any partner not so licensed shall hold himself out through advertising or otherwise as being a licensee.* . . ." (Our emphasis).

The appellant and appellee were engaged in the funeral business with James Higgins from 1922 to 1943, operating under the name of Higgins' Funeral Home. Mr. Higgins was a licensed embalmer, while appellant and appellee were not. During that period of years the three became licensed funeral directors. Soon after Mr. Higgins' death, these parties filed proceedings for dissolution of the partnership and for an accounting which resulted in a settlement out of court with the Higgins' estate in which payment was made by these parties for the interest of Mr. Higgins. Thereafter, the parties continued to do a funeral business with the assitance of appellee's wife who was a licensed embalmer; each party being paid Twenty-Five ($25.00) Dollars per funeral. During the years that this working

arrangement continued, from 1943 to 1953, the appellant worked on a night shift for the Studebaker Corporation. The parties established a joint bank account where monies were deposited from funerals and bills were paid, both parties signing checks therefor. A store license was obtained to operate in the name of both parties.

On April 8, 1953, notice was given appellant of appellee's terminating and dissolving the business relationship. It is appellant's contention that the alleged partnership relation ensued between these parties from 1922 up until the time of trial. This was denied by appellee on the basis that appellant was not a licensed funeral director or embalmer, which fact would prohibit him from entering into a partnership contract and he had not complied with Chapter 165 of the Acts of 1939 and amendments thereto. Chapter 62 of the Acts of 1923, §§1 to 12, 17, as amended by the Acts of 1931, Chapter 92, §§1 to 15 were repealed by Chapter 165 of the Acts of the General Assembly of 1939, which was before the date appellant alleged in his complaint that the present partnership was entered into and which appellant alleges in his brief. The appellant testified that the former business of Higgins' Funeral Home continued until Mr. Higgins' death. It is clear under the allegations of appellant's complaint and the evidence supporting the same, that the Higgins' partnership ceased to exist in March, 1943; that thereafter a new working arrangement was made between the appellant and appellee. The issue of the dissolved funeral home, therefore, does not pertain to the issues in this case.

Chapter 165, Acts of General Assembly of 1939, §63-722, *supra,* which was in effect on March 23, 1943, which is the date appellant contends that a partnership was entered into, is the legislative enactment as of that

date as to the qualifications of funeral directors or embalmers, which is as follows:

"It shall be unlawful for any person to act, directly or indirectly, *as an embalmer or funeral director*, or to engage in the embalming or funeral directing profession and business, or to hold himself out as so acting or being so engaged, unless and until such person has been licensed by the State Board of Embalmers and Funeral Directors, pursuant to the provisions of this act, to so act or to be so engaged. . . .

"Natural persons only shall be eligible to apply for a funeral director's license and no person shall hereafter be granted an initial funeral director's license to operate as the full-time funeral director of more than one establishment at one time. When more than one person propose(s) to engage in the funeral directing business, either as partners or in some other noncorporate association, it shall be necessary for all persons in such partnership or other noncorporate association, regardless of the degree of financial participation, except those who are members of a nonprofit or cooperative association, such as descried in subsection (g) of Sec. 4 hereof to secure a license to operate as a funeral director from the State Board of Embalmers and Funeral Directors: . . ." (Our emphasis).

This Act required all funeral directors' licenses to be renewed on an annual basis, and, on failure of any holder of a funeral director's license to secure a renewal by March 1 succeeding the previous date, would automatically cancel and annul licenses previously granted, and that no renewal license would be issued until a legally-prescribed re-examination had been passed, in this case, by appellant.

The appellant testified that he had never been a licensed embalmer, that he had never renewed his funeral director's license, that he did not have a funeral director's license prior to 1940, it having expired during

the partnership with the Higgins' Funeral Home. This is in direct conflict with Chapter 165 of the Acts of 1939. It is clear that the Legislative act governing who could be a funeral director or embalmer under the 1939 Act provided that it should be unlawful for any person to act directly or indirectly as an embalmer or funeral director and that "it shall be necessary *for all persons in such partnership* . . . regardless of the degree of financial participation . . . to secure a license to operate as a funeral director . . .". (Our emphasis).

It is further to be noted that §7 of the Acts of General Assembly, 1939, *supra*, provides as follows:

"Funeral directors' licenses heretofore issued by the State Board of Embalmers and Funeral Directors are hereby cancelled and annulled. . . ."

Section 8 of the Act provides in substance that licenses thereafter issued would be on the calendar year and that failure to renew a funeral director's license by March 1, the calendar year succeeding the previous renewal date, should without any action of the board, automatically cancel and annul any lincense previously granted. The Legislature, therefore, has not only authorized, but has required all persons requiring embalmers' and funeral directors' licenses to renew the same within a specified time of the Act. This appellant did not do. The evidence is uncontradicted that only the appellee, individually, held a license as a funeral director after 1943. There was evidence that appellee told appellant they were not partners; that when he heard appellant was claiming to be a partner, he immediately gave notice to the appellant of terminating the arrangement. The appellant testified he refused to sign a partnership agreement as he was not satisfied with the terms. There is

no evidence that any matter pertaining to the qualifications of appellant was ever presented to the State Board of Embalmers and Funeral Directors or that any dispute existed. Thus, there is no issue regarding the administrative policy of the Board.

The appellant, failing to have a funeral director's license as required by the Legislative Act in force and effect on March 22, 1943, therefore, was in no position, regardless of what was said or done in their working arrangement, to enter into a legal partnership with the appellee for such purposes for which he would have been entitled to an accounting, such contract being illegal. The rule applicable to such facts is well stated in 40 Am. Jur., p. 358, §326, which is as follows:

> "Inasmuch as no member of an illegal partnership can obtain relief against any other member in respect to a transaction tainted with illegality, one partner cannot compel his copartner to account in equity where the partnership was organized for the purpose of conduct an illegal business, or for the management of a lawful business in an illegal manner. In such cases, equity will not lend its aid either to compel a division of the profits or to enforce contribution as to losses sustained by the firm. Nor will an accounting of the profits of a partnership be awarded where the partnership was only part of a larger contract of which the other portions are illegal."

A partnership may not be formed for an illegal purpose or one contrary to public policy where the thing to be done is illegal. It is a general rule that courts will not aid either party to an illegal agreement where a partnership is formed for the prosecution of an illegal business or for the conduct of a lawful business in an illegal manner and will not lend their aid to assist either party thereto in an action against the other. There can, accordingly, be no ac-

counting demanded of an alleged partner for the profits which may be in his hands where a partnership is formed for an unlawful purpose or engages in an unlawful transaction. 68 C. J. S., p. 411, §7; *Thatcher* v. *Snyder* (1941), 308 Ill. App. 325, 31 N. E. 2d 333. It is fundamental that no principle of law is more clearly established than that the law will not enforce an illegal transaction. *Nahas* v. *George* (1951), 156 Ohio St. 52, 99 N. E. 2d 898; *Hunter* v. *Pfeiffer* (1886), 108 Ind. 197, 9 N. E. 124.

Where a business, profession or acts have been made the subject of legislation and penalties have been fixed for failure to comply with the statute, the one who asserts a right based on the business, profession or acts is by law informed that his rights depend on the compliance with the statutes. *Hill* v. *Ward* (1909), 45 Ind. App. 458, 91 N. E. 38.

Concerning the business transaction for which an accounting was sought after the passage of Chapter 38 of the Acts of 1949, our attention is directed to the fact that this amendment provided for a new and different classification for those desiring to engage in the funeral-directing business and provided for "silent partners". No such provision was contained in the prior acts for such classification. From the language used in the 1949 amendment, it seems clear to this court, in view of other regulations and provisions provided for in the 1949 Act for the conducting of a funeral business, that the Legislature had in mind in the passage thereof and provided for a situation of where more than one individuals intending to engage in the funeral-directing business as a partnership, that, in that event, it would be necessary for one of the partners to first secure a license so to act and to operate as a funeral director and made an exception that no

"silent partners" or any partners not licensed should hold himself out as a licensee through advertising or otherwise. The evidence disclosed that in the years 1949, 1950 and 1951 appellant received financial statements of the business done; that in 1949 or 1950, an attorney filed income tax returns for the funeral home which was a partnership return made in the presence of both of the parties to this action. A tax accountant likewise testified he filed tax returns for the Haynes Funeral Home from 1948 to 1953, and that the partnership return listed appellant and appellee as being the partners; that when supplies were bought they were paid for by check signed by both of the parties to this action.

There is no evidence that appellant's name was used on signs, literature or advertising of any description; neither was there evidence that he held himself out as a licensed funeral director through advertising or other means as being a licensee according to the 1949 amendment. In fact, after the passage of the 1949 Act, the record is bare of any evidence on the part of appellant in the violation of the exception thereto.

Applying the evidence to the provisions of the 1949 amendment, it is apparent that the appellee was a properly and duly licensed funeral director; that the business was carried on in the name of a duly-licensed partner doing business under the name of Haynes Mortuary; that appellant did not, at any time after the passage of the 1949 amendment, hold himself out to the public by advertising as a duly-licensed funeral director.

Considering the amendment dealing with the subject matter herein and the evidence applicable thereto after the effective date of Chapter 38 of the Acts of 1949, to-wit: September 10, 1949, it is clear that the parties

complied with the 1949 amendment and that under its provisions the appellant would be entitled to an accounting as prayed for in his complaint for that period from the effective date of the 1949 amendment to date of notice of termination, to-wit: April 8, 1953.

By specifications four and six of appellant's motion for new trial, he challenges misconduct of the prevailing party and presents the issue of newly-discovered evidence. The newly-discovered evidence was the purported partnership agreement identified as plaintiff's Exhibit 8 which was before the trial court in this case and which had been filed in the office of the State Board of Embalmers and Funeral Directors on August 30, 1946. Exhibit 8 was signed by the appellee and his wife and on which paper there appeared the typewritten name of appellant. The appellant testified in the trial of this case that he had never executed such agreement; that when it was presented to him it did not meet his approval but contends in the motion for new trial that the purported agreement was concealed from him and was executed and filed secretly with the Embalmers' Board and that the appellee was guilty of misconduct during the trial when he denied that he ever entered into an agreement with the appellant, written or oral. It is uncontradicted that all the parties did not sign the purported agreement. In view of the fact that both the appellant and appellee testified in reference to Exhibit 8 that they had never entered into a written partnership agreement and the fact that it appears from the evidence the appellant refused to sign it, we see no merit now to appellant's contention that newly-discovered evidence exists by virtue of the unsigned purported agreement. Notwithstanding, motions generally based upon newly-discovered evidence are looked upon with distrust and disfavor and the

same as given here did not constitute misconduct on the part of the prevailing party or constitute newly-discovered evidence.

Judgment reversed insofar as it holds the partnership between the parties to be illegal from the effective date of Chapter 38 of the Acts of 1949, to-wit: September 10, 1949, to April 8, 1953.

Affirmed in all other respects. Cause remanded, with instructions to grant the appellant a new trial for the limited purpose of an accounting from the effective date of Chapter 38 of the Acts of 1949, to-wit: September 10, 1949, to April 8, 1953.

## ON PETITION FOR REHEARING

KENDALL, J.—Appellee's petition for rehearing contends in part that this court erred in its original opinion in granting an accounting of the partnership for the period beginning September 10, 1949 (effective date of Chapter 38 of the Acts of 1949) to April 8, 1953, in that such decision constitutes a material variance from the allegations of appellant's complaint in the trial court; and that this court further erred in holding that appellant was a silent partner within the provisions of the 1949 Act.

We believe that the original opinion is clear, concise and sufficient to show legal reasoning for the result reached in view of the factual situation presented by the evidence and the various statutes of our state applicable to licensing of funeral directors and embalmers. The various sections of the statutes cited by this court in its original opinion including the 1949 Act wherein the Legislature makes reference to "silent partners" were in full force and effect when

this action was tried in the lower court, and it is presumed that appellee knew of the provisions thereof, thus appellee's contention that our decision constitutes a material variance from the allegations of the complaint is without merit. All the dates were before the court and all the parties in the original trial, as well as evidence of the partnership between these parties and Mr. Higgins.

Appellee seems to lose sight of the fact that the uncontradicted evidence reveals that the appellant and appellee were engaged in the funeral business as a partnership from 1922, or 1923, with one Mr. Higgins until Mr. Higgins' death in 1943, at which time the partnership was terminated. In appellant's complaint, it is alleged that these parties entered a partnership March 25, 1943, for the purpose of operating a funeral home and continued to so operate until April 8, 1953. It is for that period that appellant sought an accounting. It is uncontradicted that appellant during those years was not a licensed funeral director or embalmer; however, there is evidence of probative value that he did work around the funeral home and had a joint bank account. The trial court denied the accounting for the entire period on the belief that it was an illegal contract. In so doing doubtless the trial court considered and so construed Chapter 165 of the Acts of the General Assembly of 1939, Sec. 63-717, Burns' 1951 Replacement, as the statutory provisions designating the qualifications of a funeral director or embalmer. However, during the period of the working arrangement between these parties, Chapter 38 of the Acts of 1949 was pased by the legislature after which the parties continued the working arrangement which Act designated a new and different clasification referred to therein as silent partners. The original opinion goes

into detail as to the evidence of the particular arrangement between the parties.

It is apparent that this act removed any restrictions of the 1939 Act in reference to prohibiting the association of unlicensed partners.

To ascertain the legislative intent of the 1949 Act, we may look at the prior law in reference to licensing of funeral directors and embalmers. *Lincoln School Tp.* v. *American School Furniture Co.* (1903), 31 Ind. App. 405, 68 N. E. 301.

In the case of *Greenbush Cemetery Assn.* v. *Van Natta* (1911) (Transfer Denied 1912), 49 Ind. App. 192, 94 N. E. 899, the court said:

"... The legislative intention, however, is to be ascertained from an examination of the whole as well as the separate parts of an act, and when so ascertained the intention will control the strict letter of the statute, or the literal import of particular terms, where to adhere to such strict letter or literal import of terms would lead to injustice, absurdity or contradictory provisions. ..."

In appellant's brief it is said, "In the lower court appellee made such contention and established that appellant could not possibly have entered into a legal partnership with appellee in 1943."

This court upheld appellee's contention that appellant could not have made a legal partnership in 1943 or even up until the effective date of the 1949 Act but by the passage of the 1949 Act a different classification was made by the legislature which act was in full force and effect when this case was tried in the lower court. This does not constitute any variance for the reasons already stated.

We have read the cases cited by appellee in reference to the conditions presented but the same are not applicable in any particular to the facts of the case under

consideration and the law applicable thereto. There is a vast difference in the facts of this case from a suit brought upon one theory and a recovery based upon another. That is not the case instantly.

Considering all the evidence before the trial court and in conjunction with the various statutes applicable thereto, we find no error in the original opinion.

Petition for rehearing denied.

NOTE.—Reported in 129 N. E. 2d 362. Rehearing denied 130 N. E. 2d 482.