Sandra K. COOK, as Executrix of the Last Will and Testament of Victor Chapelier, Deceased, and as Heir, Defendants-Appellants,

v.

Mary Jean LOFTUS, Jerry Shirley, Regina F. Richards, Ray T. Shirley, Robert L. Shirley and Geraldine Shirley, Plaintiffs-Appellees.

No. 1–580A128.

Court of Appeals of Indiana, First District.

Jan. 13, 1981.
Rehearing Denied Feb. 18, 1981.

 

John A. Cody, Jr., Cody & Cody, New Albany, for defendants-appellants.

Michael J. McDaniel and Donald R. Forrest, New Albany, for plaintiffs-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Sandra K. Cook, as executrix of the last will and testament of Victor Chapelier and as devisee, appeals the judgment of the Floyd Superior Court which vacated the probate of the pretended will of Victor Chapelier dated December 22, 1976, because of undue influence and admitted to probate the will of Victor Chapelier dated January 23, 1975.

## STATEMENT OF THE FACTS

Victor and Agnes Chapelier were married in 1919 and lived their married life on West First Street in New Albany, Indiana. During their marriage, Victor and Agnes led a frugal life. Victor was a mechanic for a machine company in Louisville, Kentucky, and Agnes took in washing, sewing, and ironing. They were childless; however, Agnes had six brothers and sisters and many nieces and nephews including the appellees.

On January 23, 1975, Victor and Agnes executed their wills. Each will contained the same or similar provisions. Victor left everything to Agnes unless she predeceased him, in which event the estate was to be devised and bequeathed to various individuals including the appellees. At the time of these wills, Victor and Agnes owned their home, another home on West First Street, and a farm on Old Vincennes Road near New Albany.

Sandra Cook (Sandra) and her family lived next door to Victor and Agnes in a home which she rented from the Chapeliers. Sandra was Agnes' great niece. Agnes and Victor gave a parcel of land on their farm to Sandra and in late 1974 or early 1975, they also loaned $20,000 to Sandra for her to build a new home. Under the terms of the loan, Sandra was to pay $200 per month to the Chapeliers.

On May 2, 1976, Agnes Chapelier died. At that time Victor was in poor health. He suffered from chronic kidney problems, cataracts, prostatic cancer, cerebral arteriosclerosis, and arterioscleric heart disease. Dr. Streepy testified that as a result of the cerebral arteriosclerosis Victor would be lucid at times and confused and disoriented at other times. Various relatives stayed with Victor during the first two weeks after his wife's death until Sandra and her family moved into Victor's home. After approximately one month, Victor's furniture was sold, and Victor, Sandra, and her family moved into her new home on the farm on Old Vincesses Road. Subsequent to Agnes' death, John Richards was given a Power of Attorney to take care of Victor's financial affairs. Richards continued to do so until September or October 1976, when he found discrepancies between his records and the bank balance. It was discovered that Victor had written checks and made withdrawals without telling Richards.

While Victor was living with Sandra, it was agreed that Sandra would not make payments on the $20,000 loan, and she discontinued these payments two months after Agnes' death. In the fall and winter of 1976, Sandra bought a new car and Jeep with Victor's funds. She explained that Victor gave her the money because her Volkswagen was too small and the road to their house was impassible in the winter.

On December 22, 1976, Victor made an appointment with an attorney to make a new will. Victor told the attorney what he wanted the terms of the will to be and returned a couple of days later to sign it. Sandra accompanied Victor to the attorney's office both times. On the second visit, she read the will to Victor, and he went into another room with two witnesses to

sign it. This new will left his entire estate to Sandra. Victor took home both the 1975 and 1976 will and tore up the 1975 will before throwing it in the trash. He told Sandra that he was upset with his other relatives for trying to put him in a nursing home. Several parties testified that both Victor and Agnes had a severe aversion to living in a nursing home. Sandra admitted that she told Victor that others were going to put him in a nursing home; however, Geraldine Shirley, Jerry Shirley, and Jean Loftus testified that they did not know of anyone who planned to do so.

In February of 1977, a guardianship hearing for Victor was held. At this hearing, Victor expressed his belief that the hearing was to put him into a nursing home. Dr. Jefferson Streepy admitted that he had told Sandra on September 30, 1977, that Victor should be put into a nursing home, but he did not recall any earlier conversations on the subject.

Victor Chapelier died on February 2, 1978. The 1976 will was admitted into probate on February 6, 1978. The appellees, devisees or legatees under the 1975 will, filed a complaint to contest the 1976 will upon the grounds that it was unduly executed and that Victor Chapelier was of unsound mind at the date of its execution. The trial court found that the 1976 will was executed as a result of undue influence; that the 1975 will was not validly revoked; and that the 1975 will was valid.

## ISSUES

The appellant raises the following issues for our review.[1]

1. Whether the appellees qualify as interested parties under IC 29–1–7–17.

2. Whether the appellees failed to join all necessary parties required under IC 29–1–7–17.

## DECISION

*Issue One*

Sandra contends that the appellees have no standing as interested parties under Ind. Code 29–1–7–17 which states:

1. We have consolidated and restated the issues.

"Any interested person may contest the validity of any will or resist the probate thereof, at any time within five (5) months after the same has been offered for probate, by filing in the court having jurisdiction of the probate of the decedent's will his allegations in writing verified by affidavit, setting forth the unsoundness of mind of the testator, the undue execution of the will, that the same was executed under duress, or was obtained by fraud, or any other valid objection to its validity or the probate thereof; and the executor and all other persons beneficially interested therein shall be made defendants thereto."

Sandra argues that since the appellees allege they are interested parties by virtue of being devisees and legatees under the 1975 will, they must prove that the 1975 will was validly executed according to the requirements of the law and has not been revoked. She states that appellees have failed to prove that Victor executed the 1975 will with the requisite testamentary capacity. Further, Sandra states that Victor's 1975 will was validly revoked.

The appellees contend that the stipulation about the 1975 will, entered into by the parties, supplies the proof that the 1975 will was executed in accordance with the formalities required by law, and that there is sufficient evidence in the record to show that Victor had the requisite testamentary capacity on January 23, 1975. Further, they contend that the 1975 will was not validly revoked because Victor did not have the intent to revoke as a result of undue influence.

An action to set aside the probate of an alleged will is purely statutory and can only be brought and successfully maintained in the manner and within the limitations prescribed by statute. *In Re Plummer v. Kaag*, (1966) 141 Ind.App. 142, 219 N.E.2d 917, *trans. den.* (1967); *Moll v. Goedeke*, (1940) 107 Ind.App. 446, 25 N.E.2d

258. Clearly under IC 29–1–7–17, only interested parties may contest a will, and it is incumbent upon those individuals to prove their right to maintain the action. *McDonald v. McDonald*, (1895) 142 Ind. 55, 41 N.E. 336. Exactly what must be proved when a party alleges an interest in the estate under a prior will was decided by our Supreme Court in *Emhardt, Admr. v. Collett*, (1921) 191 Ind. 215, 131 N.E. 48. Judge Ewbank stated:

"The questions of law presented . . . is [sic] whether or not the appellee, whose only interest in the estate of Edward A. Adams, if any she had, grew out of an alleged will executed by him in her favor, had the burden of proving the facts which she alleged in her complaint as the basis of such interest, and was required to establish by proof facts which would authorize the probate of the will under which she claims, if the later will did not exist; or whether mere proof that an instrument existed purporting to bear the signatures of the testator and two witnesses, which recited that all of his estate was bequeathed to her, sufficiently proved that she was a party in interest (§ 251 Burns 1914, § 251 R.S. 1881; § 3154 Burns 1914, Acts 1911 p. 325) to enable her to maintain an action for the overthrow of the later will upon proof of its invalidity, without any showing as to the validity of the one under which she claims. We think that the first of these questions must be answered in the affirmative, and the second in the negative; . . ."

*Id.* at 221, 131 N.E. 48. It is therefore obligatory that appellees prove that the 1975 will was validly executed; that Victor possessed testamentary capacity upon execution of this will; and that the will was not revoked.

Before trial, the parties entered into a stipulation that the will of Victor Chapelier dated January 23, 1975, was validly executed; however, an issue remained whether Victor had the testamentary capacity. The trial court in its judgment found that Victor had the testamentary capacity, and Sandra contends the judgment of the trial court is contrary to law since it is not sustained by any evidence.

■ When a judgment is attacked as being contrary to law because of insufficient evidence, this court may neither consider the credibility of the witnesses nor weigh the evidence. We will look only to that evidence most favorable to the appellee. *Cynthiana State Bank v. Murphy*, (1949) 119 Ind.App. 685, 88 N.E.2d 252, *trans. den.* (1950). If there is any evidence of probative value to support the verdict on any grounds specified in the complaint, we must affirm the judgment. *Noyer v. Ecker*, (1954) 125 Ind.App. 63, 119 N.E.2d 902, *trans. den.* After a careful examination of the record in this case, we conclude that the evidence is sufficient to uphold the trial court's decision that Victor had the requisite testamentary capacity on January 23, 1975.

The record reflects that Dr. Jefferson Streepy testified that Victor suffered from cerebral arteriosclerosis from 1974. Victor's condition became worse as time passed, and by 1976, Victor was of unsound mind part of the time and sound mind the rest of the time. From this testimony, the trial court could infer that Victor Chapelier was of sound mind in 1975 since his condition prior to 1976 was less acute. However, this is not the only testimony which was contained in the record. Louise Payne, Victor's cousin, visited Victor and Agnes every two to three weeks and stated that every time she was around Victor his mind was all right; she never saw him when he was confused. Sandra also testified that Victor always knew what he was doing. It is clear that this testimony supports the trial court in finding Victor of sound mind in January 1975.

■ Sandra also contends that the 1975 will was revoked, and therefore, the appellees do not have standing. She argues that her testimony that Victor destroyed the 1975 will is the only evidence concerning whether the 1975 will was in force at Victor's death. Therefore, she alleges that the evidence is insufficient as a matter of law

to uphold the trial court's finding that the 1975 will was not validly revoked. We disagree.

It is true that physical destruction by the testator is sufficient to revoke a will if coupled with the intent to revoke. Ind. Code 29–1–5–6. However, the intention to revoke must be as clear and unequivocal as was the intention to devise and bequeath. *Estate of Granger v. Gosport Cemetery Ass'n.*, (1954) 124 Ind.App. 686, 118 N.E.2d 386, *trans. den.* Whether the required intent to revoke was present at the time of revocation is a question of fact. *Cope v. Lynch*, (1961) 132 Ind.App. 673, 176 N.E.2d 897, *trans. den.* (1962).

■ The trial court found that the 1976 will of Victor Chapelier was executed as a result of undue influence. It is clear from the testimony Victor was told by Sandra that the appellees wanted to put him in a nursing home; Victor had a severe aversion to being put into a nursing home; the 1976 will was executed and the 1975 will was destroyed on the same day with Sandra present; and Victor destroyed the 1975 will because he believed that appellees had tried to put him in a nursing home. We find that the evidence in the record is sufficient to uphold the trial court's finding of undue influence. The undue influence which caused the execution of the 1976 will to be invalid can also be viewed as causing the revocation of the 1975 will to be ineffective. 95 C.J.S. *Wills* § 285 (1957); 2 Bowe-Parker, *Page on Wills* § 21.27 (3d Ed. 1960). Therefore, we find that there is sufficient evidence to uphold the trial court's judgment. The 1975 will was validly executed and in existence at the time of Victor's death, and appellees have proved that they are interested parties.

*Issue Two*

Sandra contends appellees have failed to join all necessary parties as required by IC 29–1–7–17. Specifically, she contends that Victor's heirs at law and all beneficiaries under the 1975 will who did not join as plaintiffs must be made defendants to the will contest. Appellees contend only the beneficiaries under the will which is being contested must be made defendants.

Indiana Code 29–1–7–17 provides that "the executor and all other persons beneficially interested therein shall be made defendants thereto." This section has been interpreted as requiring the executor, trustees, and beneficiaries under the will which is being contested to be defendants to the action. *Moll, supra; Faylor v. Fehler*, (1914) 181 Ind. 441, 104 N.E. 22. However, the questions of law as to whether heirs at law and as to whether all non-contesting beneficiaries under the will which gives the contestants standing must be made defendants to the action are ones of first impression.

■ We need not decide the issue of whether beneficiaries under the 1975 will who did not join as plaintiffs must be made defendants. Although the statutory contest of a will is a special proceeding, rules governing trials of civil actions under the code are applicable, and pleadings, motions, and answers are sanctioned. *Moll, supra.* A defense of failure to join an indispensable party may be made in any pleading permitted or ordered under Ind. Rules of Procedure, Trial Rule 7(A) or by motion for judgment on the pleadings, or at the trial on the merits. Ind. Rules of Procedure, Trial Rule 12(H)(2). A thorough search of the record shows that Sandra first raised her objection to the failure to join some beneficiaries under the 1975 will as defendants in her motion to correct errors. This objection came too late and is waived. *Arnold v. Dirrim*, (1979) Ind.App., 398 N.E.2d 442.

■ We now turn to Sandra's contention that Victor's heirs at law are necessary parties in the present action. In support of this contention, Sandra relies solely upon Professor Grimes' statement that "[a]n heir at law is an interested party to a will contest though devised nothing under the probated or alleged subsequent will." 2A J. Grimes, Henry's Probate Law and Practice, 779 (7th ed. 1979). This statement is not germane to the issue before us. Professor Grimes makes a distinction between "inter-

ested parties" and parties "beneficially interested therein." The former refers to individuals who may contest the will, and not those who are necessary parties as Professor Grimes clearly states:

"The provisions of IC 29–1–7–17 thus seemingly permit several different heirs to institute separate actions to contest or resist the probate of the same will, such heirs are not beneficially interested in the will, i. e., took nothing by its terms; they need not be made parties to another action. But each being an 'interested person' by reason of being deprived of a share in the estate is an 'interested person' capable of instituting the action." (Emphasis added).

*Id.* at 776.

In determining the meaning of statutes, there are certain principles which we must follow. When the language of a statute is plain and unambiguous, there is no occasion for construction to ascertain its meaning. *Bowen v. Review Board of Indiana Employment Security Division*, (1977) Ind.App., 362 N.E.2d 1178. However, judicial construction of a statute is permissible when the statute is ambiguous and of doubtful meaning. *Bowen, supra.*

We believe IC 29–1–7–17 to be ambiguous and unclear as to whether heirs at law are "persons beneficially interested therein" as provided by the statute. In construing IC 29–1–7–17 we must ascertain and give effect to the intention of the legislature expressed in the statute. *St. Germain v. State*, (1977) 267 Ind. 252, 369 N.E.2d 931. When the language used in the statute is ambiguous or uncertain, we may look not only to the language, but also to the nature and subject matter of the act and the object to be accomplished thereby in ascertaining the legislative intent. *Allen Co. Dept. of Public Welfare v. Ball Memorial Hospital*, (1969) 253 Ind. 179, 252 N.E.2d 424.

■ A will contest action is a specific statutory remedy which is available to one after an *ex parte* proceeding in which a will is admitted to probate. This action can be brought and successfully maintained in the manner prescribed by statute. *In Re Plummer v. Kaag, supra.* The only question properly involved in a proceeding to resist the probate of a will or to contest its validity after the probate is whether the will is the will of the testator. *Hamilton v. Huntington*, (1944) 223 Ind. 143, 58 N.E.2d 349, reh. den. 223 Ind. 143, 59 N.E.2d 122.

■ It is quite clear, given the nature of a will contest, that the action is not a general action to determine any and every individual's claim in the decedent's estate. It's sole purpose is to determine the validity of the will.[2] Therefore, we hold that the language of IC 29–1–7–17 "all other persons beneficially interested therein" refers to persons beneficially interested in the will which is being contested. We agree with Professor Grimes' statement that:

"I.C. 29–1–7–17 would appear to differentiate between those who may contest a will and those who are necessary parties to a will contest. As seen heretofore all heirs may contest unless disinherited under a previous will. But only those 'beneficially interested therein' need be made parties. This would seem to indicate that only the executor, the legatees, and devisees are necessary parties. Other heirs are not unless they take some beneficial interest under the will." (Footnotes omitted).

2A J. Grimes, *supra* at 781. To hold otherwise would expand the scope of a will contest action beyond that of the adjudication of the validity of the will.

We hold that Victor's heirs at law were not necessary parties, and the appellees have joined all necessary parties as contemplated by the statute.

Judgment affirmed.

NEAL, P. J., concurs.

YOUNG, P. J. (sitting by designation), concurs.

---

2. This purpose is not only apparent from the cases dealing with IC 29-1-7-17, but is also apparent from the statute itself. The grounds upon which a will may be contested deal specifically with the validity of the instrument, i. e., undue execution and unsoundness of the testator's mind.