In the Matter of the Supervised Administration of the ESTATE of Mildred R. FUNK, Deceased. Theodora MASTROGANY, Appellant–Petitioner,

v.

**PURDUE UNIVERSITY and First United Presbyterian Church of Hammond, Indiana, Appellees–Respondents,**

and

**Alice B. Muenich, as Personal Representative of the Estate of Mildred R. Funk, Deceased Non–Party to Appeal.**

No. 45A03–9503–CV–68.

Court of Appeals of Indiana.

Aug. 29, 1995.

Transfer Denied Feb. 5, 1996.

Nick Katich, Lucas, Holcomb & Medrea, Merrillville, for appellant.

Stephen R. Pennell, Nina B. Kirkpatrick, Stuart & Branigin, Lafayette, for appellees.

## OPINION

GARRARD, Judge.

This case presents the question of whether Mildred R. Funk revoked her last will and testament by mutilation before her death. The trial court answered this question in the negative. We affirm.

### *FACTS*

Mildred R. Funk died on January 7, 1993 when she was 98 years old. The original copy of her will, executed on September 1, 1988, was found in a locked box at her home.[1] The will named the First United Presbyterian Church of Hammond, Indiana (FUPC) and the Scholarship Fund of Purdue University (Purdue) as residuary beneficiaries. After execution of the will, however, Ms. Funk had handwritten numerous notes on the typed document, including changes in beneficiaries and certain bequests.[2] She had drawn lines through her bequests to FUPC and Purdue. In addition, page four was missing and a portion of page five had been cut out and then reattached by stapling. Ms. Funk's niece and sole heir by way of intestacy, Theodora Mastrogany, objected to probate of the will claiming that it had been revoked by mutilation. Record at 37–39.

At a trial to the court without a jury, attorney Joseph Reid testified that he prepared the will executed on September 1, 1988 for Ms. Funk. Although he had no recollection of discussing with Ms. Funk the formalities of execution, amendments, or revocation of a will, his normal practice is to explain these procedures. During the latter part of 1992, Ms. Funk telephoned Reid and wanted to meet with him to discuss some changes to her will. Record at 254. Ms. Funk indicated that she would call back to make an appointment. Reid did not hear from Ms. Funk

---

1. Contained in the record at pages 10–17.

2. The parties stipulated that the handwritten notes were in Ms. Funk's handwriting. Record at 318–319.

again. Testimony at trial revealed that Ms. Funk maintained possession and sole control over her will. Moreover, the record indicates that she remained mentally competent and paid her own bills until she was taken to the hospital shortly before her death.

The trial court entered the following order on October 25, 1994:

> The Court, having had the matter of the admission of the decedent's alleged will to probate, and objection to such probate, under advisement, now denies the objection and admits the will to probate as the last will of the decedent.

Record at 215. Mastrogany appeals.

### *ISSUE*

The sole issue presented for our review is whether the trial court's order probating the decedent's will was contrary to law.

### *DISCUSSION & DECISION*

 Mastrogany appeals from a negative judgment, and therefore the judgment of the trial court will only be reversed if it is contrary to law. Thus, we will set aside the judgment of the court only if the evidence is without conflict and leads only to one result which is opposite that reached by the trial court. *Matter of Estate of Borom* (1990), Ind.App., 562 N.E.2d 772, 773–74.

 In this state the revocation of a will in whole or in part is governed wholly by statute. *Fletcher Trust Co. v. Morse* (1951), 230 Ind. 44, 101 N.E.2d 658, 660–61. This statute provides that a written will can be revoked in only one of two ways: (1) the testator or some other person in his presence and by his direction destroys or mutilates the will with intent to revoke, or (2) the testator executes another writing for that purpose which is signed, subscribed, and attested as required by statute. Further, a will can be revoked in part only by the execution of a second writing meeting all the statutory formalities. Ind.Code § 29–1–5–6 (West Supp. 1994). Our supreme court has summarized the two things that must occur to constitute a valid revocation as being: (1) an intent to revoke, and (2) an act manifesting the inten-

tion. *Id.* quoting *Forbing v. Weber* (1885), 99 Ind. 588, 589.

 Mastrogany recognizes that the revocation of wills is governed by statute, but she argues a legal presumption in favor of revocation aids her in the present case. She relies upon the following language from a venerable supreme court decision:

> We recognize as a settled principle of law that where the testator retains the possession or control of his will, and at or after his death it is not found, or is found thereafter in a mutilated or defaced condition, the presumption arises that he destroyed or mutilated it for the purpose of revoking it. But this presumption may be rebutted by evidence.

*McDonald v. McDonald* (1895), 142 Ind. 55, 41 N.E. 336, 345. In *McDonald*, contestants of a will argued that the lost or stolen will of the late Senator Joseph McDonald had been replaced with a "pretended will." A jury found the pretended will had not been executed by the testator and set it aside. *Id.*, 41 N.E. at 337. After affirming the lower court's judgment, the supreme court refused to probate the "lost" will since that question was not placed before it by any pleading in the case. *Id.* at 348.

 This court has applied the presumption of revocation in subsequent cases involving wills which were in a testator's possession or control and could not be located after the testator's death. *See Perez v. Gilbert* (1992), Ind.App., 586 N.E.2d 921, 926, *reh'g denied*, (holding trial court's finding that missing will was presumed lost rather than revoked was contrary to law); *Matter of Estate of Borom*, 562 N.E.2d at 775 (finding that trial court incorrectly concluded that a missing will raised a permissive inference of revocation rather than a rebuttable presumption of revocation). The case at bar, however, does not concern a missing or lost will. Rather, Mastrogany claims that the presumption of revocation should apply to Ms. Funk's will due to its "mutilated" condition. Thus, we must determine what conditions constitute mutilation such that the presumption described in *McDonald v. McDonald* applies.

Fourteen years before it decided *McDonald v. McDonald,* our supreme court addressed the question of whether an act of revocation was the proper manifestation of the testator's intention to revoke a will. *Woodfill v. Patton* (1881), 76 Ind. 575. The testator had blackened his signature on the will with "a considerable number of parallel and circular lines and some cross-marks made by a common lead pencil, and drawn over and about said signature." *Id.* at 577. The court rejected the English rule requiring partial or total destruction of the paper or parchment on which a will was written, and concluded that the will had been revoked by mutilation when the testator crossed out his signature. In discussing the meaning of the term "mutilate," the court stated:

Neither the term "destroy" nor the term "mutilate" should be given the narrow and restricted meaning for which appellee contends. "Mutilate" means something less than total destruction. Mere mutilation of a will would not, of itself, take from a will all legal force. *A mutilation, however, which takes from the instrument an element essential to its validity, would have the effect to revoke it.*

*Id.* at 583 (emphasis added).

We are further guided by subsequent cases which consistently found revocation by mutilation only when the alleged act of mutilation took from the will an element essential to its validity. *See Roberts v. Fisher* (1952), 230 Ind. 667, 674, 105 N.E.2d 595 (although there was no question that testatrix revoked her will when she destroyed it in the presence of her attorney, the court stated that the mutilated copy of the will found in her home, with devises, bequests, and the signatures of the testatrix and witnesses stricken out, was itself presumptive of revocation); *In re Patton's Will* (1950), 121 Ind.App. 256, 95 N.E.2d 311, 313 (in banc), *reh'g denied,* (1951) 121 Ind.App. 256, 96 N.E.2d 353, (finding that testator mutilated his will by tearing out his signature and drawing lines through the witnesses' signatures; thus probate of the will was properly denied); *but cf. Gran-*

ger's Estate v. Gosport Cemetery Ass'n. (1954), 124 Ind.App. 686, 118 N.E.2d 386, 389 (in banc), *reh'g denied,* (1954) 124 Ind.App. 686, 119 N.E.2d 437, (rejecting appellants' argument that presumption of revocation arose from numerous ink and pencil markings found on will after testatrix's death when signatures of testatrix and witnesses remained unchanged). Finally, Black's Law Dictionary defines mutilation in terms consistent with the above referenced cases. In pertinent part it states:

As applied to written documents, such as wills, court records, and the like, [mutilation] means *rendering the document imperfect by the subtraction from it of some essential part,* as, by cutting tearing, burning, or erasure, but without totally destroying it.

BLACK'S LAW DICTIONARY 707 (6th ed.1991) (emphasis added).

We hold that the trial court properly admitted Ms. Funk's will to probate. We agree with appellee Purdue that the will at issue was not sufficiently "mutilated" as to give rise to a presumption of intent to revoke by the testatrix. Ms. Funk did not subtract from her will any essential part. She had not stricken out either her signature or the signatures of the witnesses. She did not write "void" on the will or otherwise manifest an intent to revoke the will in its entirety. Instead, her numerous marginal notes and handwritten changes to the will, at most, indicated an intent to *change* her will. As the evidence is not without conflict in favor of Mastrogany, we affirm the trial court's judgment.[3]

AFFIRMED.

HOFFMAN and BAKER, JJ., concur.

---

**3.** Even should a presumption of revocation apply to the will at issue, the trial court's judgment is not contrary to law. Substantial evidence in the

record, including the nature of Ms. Funk's marginal notations and her telephone call to Reid, indicate that she merely considered *changing* her

will. Thus, the trial court's judgment is supported by evidence in the record.