## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 24 2019, 9:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Katherine A. Harman
Jared S. Sunday
Mallor Grodner LLP
Indianapolis, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of The Supervised Estate of Gary L. Steinmetz, *deceased*, With Personal Representative:

Ruth Steinmetz,

*Appellant-Petitioner,*

v.

Daryl Steinmetz,

*Appellee-Respondent.*

January 24, 2019

Court of Appeals Case No.
18A-ES-1188

Appeal from the Dearborn Circuit Court

The Honorable James Humphrey, Judge

Trial Court Cause No.
15C01-1611-ES-35

**Robb, Judge.**

# Case Summary and Issue

After Ruth Steinmetz's son, Gary, died, Ruth was appointed personal representative of Gary's intestate estate. Several weeks after the estate was opened, Ruth filed a petition to probate a handwritten will she had discovered. The trial court denied her petition. Several months after the denial, Ruth filed a motion to set aside the trial court's denial, claiming she had newly discovered evidence relevant to whether the handwritten will should be admitted to probate. The trial court denied the motion to set aside. In this interlocutory appeal, Ruth raises one issue: whether the trial court's failure to set aside its earlier ruling denying admission of the document to probate was contrary to law. Concluding the trial court's decision on the petition to admit a document to probate was correct and therefore, the trial court's subsequent decision to not set aside that ruling was also correct, we affirm.

# Facts and Procedural History

Gary Steinmetz died unexpectedly on October 30, 2016. At the time of his death, he was living with his mother, Ruth. On November 7, 2016, Ruth opened an estate alleging Gary died intestate and asking to be appointed personal representative. The petition recognized the following people as Gary's heirs: Ruth; Daryl Steinmetz, Terrance Steinmetz, and Donna Johnson, Gary's siblings; and Lydia Trabel, daughter of Gary's deceased sister Malia Steinmetz. The court appointed Ruth personal representative of Gary's supervised estate the same day.

[3]     On December 8, 2016, Daryl filed a petition seeking to remove Ruth as personal representative because Ruth was allegedly dissipating estate assets. One day after Daryl filed his petition, Ruth filed a petition to probate a will she had found while cleaning Gary's house. Attached to Ruth's petition was a handwritten document signed by Gary and two witnesses, dated February 21, 2015, and naming Ruth as his sole beneficiary:



Volume of Exhibits at 16. Gary Kuebel, Gary's friend, and Eleanor Hartsock, Ruth's neighbor, were present when Gary executed the document and they

signed as witnesses. Also attached to Ruth's petition was a "Proof of Will" signed by Kuebel under oath attesting that Gary signified that the document was his will, executed it in the presence of both himself and Hartsock, and that he and Hartsock then signed it in the presence of each other.

[4] The trial court held a hearing on Ruth's petition. Kuebel testified that he, Hartsock, and Gary were all at Ruth's house on February 21, 2015, and Gary declared the document to be his last will and testament before signing. He reiterated that Gary "intended it to be his Last Will" several times. Transcript, Volume I at 14; *see also id.* at 24, 25. He also testified that the document "looked like the same document as what we presented today[,]" including question marks, arrows, scratched out items, and marginal notations. *Id.* at 16-17. Hartsock testified that Gary asked her if she would "be a witness that he did a drafting of a Will[.]" *Id.* at 31. However, she later testified that Gary declared the document to be "his wishes[,]" *id.* at 34, 37, and that she "honestly can't recall" if he said it was his Last Will and Testament, *id.* at 37. Kuebel and Hartsock both testified that Gary told them that day that he was going to have an attorney prepare a will for him. In April 2015, Gary had an attorney draft a will that placed all his assets in trust for Ruth during her lifetime with a remainder interest to his niece, Lydia. Gary never signed this document, however.

[5] On March 8, 2017, the trial court entered its order denying Ruth's petition to probate the purported will, finding, in part:

1. The Court finds that the document itself contains the purported signature of Gary Steinmetz and was witnessed by two (2) witnesses. The document also contains question marks, arrows and certain areas where provisions have been marked out at some time. The Court is unable to determine when alterations were made.

2. [Ruth's] witness, Eleanor [Hartsock], was one of the subscribing witnesses. . . . Ms. [Hartsock] further stated that Gary Steinmetz indicated that he was in the process of contacting an Attorney to prepare his Will. Ms. [Hartsock] also testified that [Gary] did not state that this document was his Will; [Gary] stated that this document expressed his wishes.

3. The Court also considers testimony of Donna Johnson, sister of [Gary] and daughter of [Ruth]. The Court considers Mrs. Johnson's testimony that shortly after [Gary's] death that [Ruth] repeatedly stated that [Gary] had no Will. The Court also considers testimony from Mrs. Johnson that [Ruth] offered to pay her funds to convince other family members to allow her to inherit all of [Gary's] property. . . .

4. The Court also considers that a Will was drafted for [Gary] by legal counsel, but that this Will was never executed.

Appellant's Appendix, Volume Two at 14-15 (citations omitted). The trial court concluded "that insufficient evidence has been presented to show that [Gary] intended this document to be his Last Will and Testament." *Id.* at 14.

[6] Daryl then filed a renewed request to remove Ruth as personal representative. Ruth immediately filed a response to Daryl's petition and an inventory and appraisal valuing the estate at $250,340. The trial court scheduled a hearing,

but it was not held because Ruth initiated an appeal of the trial court's March 8 order. This court dismissed the appeal because the March 8 order was neither a final judgment nor an interlocutory order appealable of right. *See Estate of Steinmetz v. Steinmetz*, 2017 WL 3882057 at *2 (Ind. Ct. App. Sept. 6, 2017).[1]

On October 24, 2017, Ruth filed a motion to set aside the March 2017 order denying probate of the February 2015 document, alleging that on September 6, 2017, but "after the Appellate Court decision[,]" she discovered a notarized "Last Will and Testament" signed by Gary on December 15, 2010. Appellant's App., Vol. Two at 51.[2] This document states:

> I Gary Steinmetz, being of sound mind and will, do hereby grant my mother, Ruth A. Steinmetz, my life assets in their entirety, my farm land, out buildings and all contents, my home and all contents, vehicles, all monetary assets: savings, checking, 401K and any other stock benefits due to me, as of this day, 12/15/2010.

*Id.* at 53. Ruth claimed this newly discovered evidence supported her claim that Gary's "intention was to leave everything to his mother and . . . that this document will bolster [the February 2015 document]." Tr., Vol. I at 82. Daryl

---

[1] While the 2017 appeal was pending, a successor personal representative was appointed by agreement of the parties.

[2] At the hearing on the motion to set aside, Ruth testified that she found the document in August when she bought a new car and opened her file box to retrieve the title to the car she was trading in. She testified the document was in a file labeled "Gary's business." Tr., Vol. I at 87. Her motion to set aside specifically stated she found the December document on September 6. Regardless of the actual date Ruth found the document, she testified that when she found it, she already knew her appeal had been dismissed.

filed a response and the trial court held a hearing on the motion. Following the hearing, the trial court issued an order on March 19, 2018, denying Ruth's motion to set aside because the December 2010 document "provides insufficient evidence for the Court to reverse its ruling" rejecting the February 2015 document. Appealed Order at 2. Ruth sought and was granted certification of the order for appellate review and this court accepted jurisdiction. Ruth now appeals the trial court's denial of her motion to set aside its order denying admission of the February 2015 document to probate.

# Discussion and Decision

## I. Standard of Review

[8] Ruth filed a "motion to set aside" the March 2017 order alleging newly discovered evidence relevant to the determination of whether to admit the February 2015 document to probate. Whether we consider this a motion to reconsider, *see* Ind. Trial Rule 54(B) (providing that "an order . . . is subject to revision at any time before the entry of [final] judgment"), or a motion for relief from judgment, *see* T.R. 60(B)(2) (providing a "court may relieve a party . . . from a judgment . . . for . . . newly discovered evidence"), the standard of review is the same: we review the trial court's decision for an abuse of discretion. *See In re Estate of Hammar*, 847 N.E.2d 960, 962 (Ind. 2006) ("A trial court's control and discretion to change its own rulings is firmly established in common law, and we will review a trial court's reconsideration of its prior rulings for abuse of discretion."); *Hill v. Ramey*, 744 N.E.2d 509, 513 (Ind. Ct.

App. 2001) ("Our review of a trial court's decision on a motion for relief from judgment pursuant to Trial Rule 60(B) is limited to determining whether the trial court abused its discretion.").[3] Thus, we will reverse the trial court's ruling only if it goes against the logic and effect of the facts or the trial court has misinterpreted the law. *Hartig v. Stratman*, 760 N.E.2d 668, 671 (Ind. Ct. App. 2002), *trans. denied.* Further, we will not reweigh the evidence, and we give the trial court's order substantial deference. *Id*.

## II. Motion to Admit Will to Probate

[9]     The crux of Ruth's argument is that the trial court erred in failing to admit the February 2015 document to probate as a valid will and then compounded the error by failing to reconsider and correct this ruling when the December 2010 document was later offered as further proof of testamentary intent. Therefore, in deciding whether the trial court abused its discretion in denying the motion to set aside, we must also look to the standard for determining whether Gary executed a valid will in February 2015 that should have been admitted to probate on the first request.

[10]    The parties agree that Daryl, as the opponent of the document, had the burden of proving that the February 2015 document was not a valid will. *See* Brief of

---

[3] Historically, our courts had held that Trial Rule 60(B) motions applied only to final judgments. In *Mitchell v. 10th and The Bypass, LLC*, 3 N.E.3d 967, 973-74 (Ind. 2014), our supreme court noted that a 2009 amendment to Rule 60 deleted the word "final" from the rule such that it no longer precludes relief from an interlocutory order.

Appellant at 14; Appellee's Brief at 12; *see also* Ind. Code § 29-1-7-20. The trial court entered findings of fact and conclusions of law *sua sponte* and we are therefore limited in our review to determining whether the evidence supports the findings and whether those findings support the judgment. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005). The findings and the judgment will be set aside only if they are clearly erroneous. *Id.* We define the clearly erroneous standard based upon whether the party is appealing a negative judgment or an adverse judgment. *Id*. Because the trial court entered an order against Ruth, who was defending the validity of the will, Ruth is appealing from an adverse judgment. *See Garling v. Ind. Dep't of Nat. Res.*, 766 N.E.2d 409, 411 (Ind. Ct. App. 2002), *trans. denied*. Therefore, "we will hold the findings clearly erroneous if they are not supported by substantial evidence of probative value. Even if the supporting evidence is substantial, we will reverse the judgment if we are left with a definite and firm conviction a mistake has been made." *Id.* (citations omitted).

[11] The trial court denied probate of the February 2015 document for several reasons: 1) inadequate publication by Gary, 2) the appearance of the document, 3) Ruth's conduct after Gary's death, and 4) the existence of a subsequent unsigned will. The trial court concluded the December 2010 document was "unpersuasive" as an additional ground for probate of the February 2015 document because it does not comply with requirements to be a valid will on its own and was too remote in time from the February 2015

document.  App. of Appellant, Vol. Two at 11.   We will address each reason in turn.

# A.  Publication

"Publication of a will is the testator's act of making it known in the presence of witnesses that the instrument to be signed is the testator's last will and testament."  *Scribner v. Gibbs*, 953 N.E.2d 475, 479 (Ind. Ct. App. 2011). Publication ensures the witnesses are aware that the testator knows he or she is about to execute a will in order to lessen the likelihood of fraud.  *Id.* at 479-80. Indiana Code section 29-1-5-3(b) sets forth the requirements for a valid will:

> (1) The testator, in the presence of two (2) or more attesting witnesses, shall signify to the witnesses that the instrument is the testator's will and either:

>> (A) sign the will:
>> (B) acknowledge the testator's signature already made; or
>> (C) at the testator's direction and in the testator's presence have someone else sign the testator's name.

> (2) The attesting witnesses must sign in the presence of the testator and each other.

"This section shall be construed in favor of effectuating the testator's intent to make a valid will."  Ind. Code § 29-1-5-3(e).

[13]    There is no question that Gary signed the February 2015 document in the presence of Kuebel and Hartsock[4] and there is no question that Kuebel and Hartsock signed the document in the presence of Gary and each other. The only question is whether Gary declared the document to be his will before signing. Kuebel signed under oath a proof of will attesting that Gary "signified that such instrument was his Last Will and Testament[.]" App. of Appellant, Vol. Two at 34. He also testified repeatedly that Gary declared the document to be his last will and testament before signing it on February 21, 2015. Hartsock was less definitive, testifying that, "[w]hen I arrived, [Gary] asked me if I would be a witness that he did a drafting of a Will and I said I would." Tr., Vol. I at 31. But she also testified that she recalled Gary to "declare it his wishes[,]" *id.* at 34, that she did not know it was his last will and testament, that Gary told her he was in the process of contacting an attorney to draft a will, and that her "assumption is that what [she] signed was [Gary's] wishes and he was working on a document with a Lawyer." *Id.* at 37.

[14]    Although Kuebel executed a proof of will and testified that Gary indicated the document was intended to be his last will and testament, Hartsock testified she was unsure of what Gary intended. A conflict in the evidence is for the finder of fact to resolve. *See Callaway v. Callaway*, 932 N.E.2d 215, 222 (Ind. Ct. App. 2010) (holding that to the extent there is a conflict between the attestation

---

[4] Donna Johnson, Gary's sister, testified that she was unsure if the signature on the document was in fact Gary's. Because there were two eyewitnesses who testified they saw Gary sign the document, we do not give credit to Johnson's doubts.

clause in a will or a proof of will and the testimony of an attesting witness, it is a matter for the factfinder to resolve). The trial court here found there was insufficient evidence that Gary published the document in accordance with statute. There is substantial evidence of probative value supporting this finding, and we will not reweigh the evidence. *See Hartig*, 760 N.E.2d at 671.

## B. Appearance

The trial court also found, as explained in its March 2018 order, that the document "contains stricken lines, question marks and drawn arrows which show uncertainty regarding whether [Gary] had ever finalized his intent." App. of Appellant, Vol. Two at 12. Even though the trial court's finding regarding the publication of the will is sufficient alone to support denying probate of the document, we also address this reason for denying probate. It is undisputed that almost half of the February 2015 document is in Ruth's handwriting. Donna Johnson, Ruth's daughter and Gary's sister, marked a copy of the February 2015 document during her testimony to show the parts she believed to be in her mother's handwriting. Ruth admitted through her attorney that the places Donna marked "are her handwriting plus up in the right-hand corner is some more stuff that she scribbled in there." Tr., Vol. I at 58. There are, as seen above, *supra* ¶ 3, arrows, asterisks, question marks, margin notations, and strike-outs on the face of the document. Kuebel testified that the document presented in court looked like the same document he signed, so it does not appear that Ruth added anything *after* the document was signed.

[16]     Ruth contends there is no impediment to admitting an "untidy document" to probate, citing *Powers v. Lacny*, 671 N.E.2d 1215 (Ind. Ct. App. 1996) and *Estate of Funk v. Purdue Univ.*, 654 N.E.2d 1174 (Ind. Ct. App. 1995).  Br. of Appellant at 18-19.  *Powers* addressed whether an otherwise valid will from which a name had been cut and written interlineations made after execution should have been admitted to probate or whether the mutilations revoked the will.  Because none of the mutilations struck an essential portion of the will (such as the testator or witness signatures), the trial court's admission of the will to probate was affirmed.  671 N.E.2d at 1216.  *Estate of Funk* also concerned whether alterations to a valid will made after it was executed revoked the will.  654 N.E.2d at 1177.  Thus, *Powers* and *Estate of Funk* are distinguishable from this case, where the document was "untidy" when it was signed, and the question is not whether a valid will was revoked but whether there is a valid will at all.  We agree with Ruth that the solemnity of Gary calling two people to witness him signing the document is somewhat at odds with simply drafting his "wishes" to take to an attorney, but signing a document that includes contradictory terms, marked out provisions, and question marks in place of important terms is also at odds with intending the document to be a solemn testamentary instrument. The evidence is not without conflict in Ruth's favor and therefore we cannot say that the trial court's decision is clearly erroneous.

## C.  Possibility of Fraud

[17]     The trial court also raised the specter of Ruth engaging in some sort of fraud to obtain all of Gary's estate when it stated it had considered Donna's concerns

regarding Ruth's repeated assertions that Gary did not have a will and her alleged offer to pay Donna to convince her siblings to allow Ruth to inherit Gary's entire estate. Ruth's conduct *after* Gary's death has no bearing on whether a document Gary signed in 2015 was validly executed if it cannot be tied to undue influence or duress. And although the trial court did not specifically mention that Ruth admitted she wrote part of the February 2015 document, there was no testimony that she coerced Gary to sign the document. As Gary was unmarried, had no children, and was close to his mother, leaving everything to Ruth would not be an unusual disposition.

## D. Subsequent Unsigned Will

[18] The trial court also considered that an attorney drafted a will for Gary after the February 2015 document that was never executed. Assuming the February 2015 document is otherwise valid, this is not an appropriate consideration. Revocation of a will is governed strictly by statute. Indiana Code section 29-1-5-6 allows revocation of a written will in two ways: 1) the testator or another in his presence and at his direction destroys or mutilates the will with intent to revoke or 2) the testator executes another writing for that purpose which is executed as required by statute. Because the attorney-drafted will was never executed, it did not revoke any earlier will. If the opposite were true, then any time a testamentary document is drafted it would void an existing valid testamentary document even if it does not accurately reflect the testator's testamentary intent. Such a construction would leave a testator without any valid will.

# E.  December 2010 Document

[19]  Finally, the trial court considered the "newly discovered evidence" offered by Ruth to bolster her claim that the February 2015 document should be admitted to probate.  In denying Ruth's motion to set aside, the trial court found that the December 2010 document does not comply with the requirements to be a will on its own merits, as it was notarized rather than witnessed, and that because it was executed over five years[5] before the purported February 2015 will, it was "unpersuasive" as additional grounds to admit the February 2015 document.

[20]  There does not seem to be any real dispute about whether Gary intended for Ruth to benefit from his estate, whether outright or during her lifetime, but he simply did not observe the legal formalities for making a valid will to effectuate that intent.  The December 2010 document may support Gary's intentions regarding his estate but it does not bolster the legal validity of the February 2015 document, which was the question before the trial court.

[21]  In sum, the trial court found that Gary did not properly publish the February 2015 document, which was the question to be answered by Ruth's petition to probate the document as Gary's will and Daryl's objection to doing so.  The evidence supports the trial court's conclusion on this question and we therefore

---

[5] The trial court specifically noted that the gap between the two documents was "over five (5) years" when in fact it was slightly over four.  App. of Appellant, Vol. Two at 11.  Nonetheless, the time that passed between the two documents was significant.

hold the trial court did not abuse its discretion in denying Ruth's motion to set aside its earlier order denying probate of the February 2015 document.

# Conclusion

[22] The trial court properly denied admission of the February 2015 document to probate upon finding it had not been properly published as a last will and testament and therefore did not abuse its discretion in denying Ruth's motion to set aside the order denying probate. The judgment of the trial court is affirmed.

[23] Affirmed.


Riley, J., and Kirsch, J., concur.